STATE OF MISSOURI at the Relation of J. FRANK DAVIS, Relator, v. FORREST SMITH, State Auditor.—75 S. W. (2d) 828.

Court en Banc, October 13, 1934.

*Ragland, Otto & Potter* for relator.

*Roy McKittrick*, Attorney-General, *Olliver W. Nolen* and *Harry G. Waltner, Jr.*, Assistant Attorneys-General, for respondent.

FRANK, C. J.—Mandamus against the State Auditor to compel him to issue to relator a warrant for $125 for personal services rendered by relator in April, 1934, as a member of the Board of Barber Examiners.

The pleadings sufficiently present the issues. Respondent adopts the statement of facts made by relator. We also adopt it, in substance, without using quotation marks.

The General Assembly at its regular session in 1933 passed an act, effective February 28, 1933, authorizing and directing the State

Treasurer to transfer to the general revenue fund of the State all sums of money in the state treasury to the credit of the following named funds. Then follows the names of numerous funds, including Board of Barbers Fund. [Laws 1933, p. 416.] "At its Extra Session, which convened October 17, 1933, the same General Assembly passed the following Act which became effective January 25, 1934:

"There is hereby appropriated out of the state treasury, chargeable to the general revenue fund, the sum of three thousand ($3,-000.00) dollars to the Board of Barber Examiners Fund." [Laws 1933-34, Ex. Sess., p. 12.]

On the 19th day of February, 1934, the State Board of Fund Commissioners of the State of Missouri duly made and entered of record an order directing and authorizing the State Treasurer and the State Auditor to transfer upon their respective books from the general revenue fund to the Board of Barber Examiners Fund the sum of $3,000, in conformity with the appropriation act last referred to. In accordance with the said order and pursuant thereto, the State Treasurer and the State Auditor on February 27, 1934, transferred the sum of $3,000 from the general revenue fund to the Board of Barber Examiners Fund. After passing the act transferring to the general revenue fund all moneys in the state treasury to the credit of the various state boards and commissions, the General Assembly at its regular session duly appropriated out of the state treasury, chargeable to the State Board of Barber Examiners Fund, for the personal services of the members of the State Board of Barber Examiners, the sum of $8,550, and for the general expenses of said board the sum of $9,450. [Laws 1933, p. 92.] The said appropriation for personal services on the 1st day of May, 1934, had been exhausted. But the $3,000 which had been appropriated at the extra session to the Board of Barber Examiners Fund and subsequently transferred to that fund from the general revenue fund by the Board of Fund Commissioners, as heretofore stated, was then, and now is, in the state treasury to the credit of the Board of Barber Examiners Fund.

On the — day of May, 1934, there was due relator, under the provisions of Section 13525, Revised Statutes 1929, for personal services rendered during the month of April, 1934, while engaged in his duties as a member of the said Board of Barber Examiners, the sum of $125. On said date he filed with respondent, as State Auditor, a statement setting forth the services so rendered and the amount due him therefor, duly approved by the secretary of said board, and requested respondent to issue a warrant upon the State Treasurer for the payment thereof. But respondent, notwithstanding, refused, and still refuses, to issue a warrant for the payment of petitioner's salary as aforesaid.

Upon the refusal of respondent to issue a warrant for the salary due relator, the latter instituted this proceeding in mandamus. Upon the filing of the petition respondent entered his voluntary appearance in the cause, waived the issuance of an alternative writ and made return to the petition as and for the writ. The return admitting the allegations of fact in the petition, relator moved for judgment on the pleadings. Only issues of law therefore are presented for determination.

Respondent makes the point that it is apparent from the provisions of Section 13525, Revised Statutes 1929, that the Legislature intended that the salary of the members of the board as well as all expenses of the board should be paid out of the fund created from fees collected by the board or its treasurer, and out of that fund only, and for that reason the Legislature had no authority to appropriate money out of the general revenue fund to pay such compensation or expenses.

The section of the statute in question reads as follows:

"The remuneration of each member shall not exceed the sum of five dollars per day while engaged in their duties as such, exclusive of the necessary traveling and other expenses, to which they shall also be entitled: *Provided, however*, that all moneys collected by the board or its treasurer shall be paid into the state treasury, there to constitute a fund for the purpose of carrying out the provisions of this chapter. The State Auditor is hereby directed to issue his warrants monthly, upon the State Treasurer out of this fund only, for the payment of the salaries, office and all other necessary expenses of said board. A detailed statement of the expenses incurred by the board, approved by the secretary of said board, shall be filed with the State Auditor before warrants are drawn for the payment of same by the State Auditor, and any surplus remaining in said fund annually after payments above authorized shall be paid into the public school fund of this State."

When the Legislature provided in this section of the statute that the State Auditor should issue his warrants monthly, upon the State Treasurer *"out of this fund only,"* it evidently meant out of the fund theretofore described. Turning to a description of that fund in the same section of the statute, we find it to be a fund created from money collected by the board and deposited in the state treasury. The provision that the salaries and expenses of this board should be paid by warrants drawn on the fund created from the money collected by the board and deposited in the state treasury, and that fund only, evinces a legislative intent that the board should be self-sustaining.

Relator makes a contention that the power of the General Assembly with respect to the public funds raised by general taxation, subject to express constitutional limitations, is supreme. In this connection

it is also contended that the Constitution does not restrict the power of the Legislature to make appropriations from the general revenue to compensate public officers for services rendered the public and reimburse them for expenses incurred in the performance of such service.

We agree that the power of the Legislature over these matters, subject to constitutional limitations, is supreme. We also agree that the Constitution does not prevent the Legislature from providing that public officers' salaries and expenses shall be paid out of the general revenue. This being true, the Legislature had authority to provide that all or any specified part of the salary and expenses of the Barber Board should be paid out of the general revenue, but it did not do so. On the contrary, it has provided, in express terms, by Section 13525, Revised Statutes 1929, that the salaries and expenses of such board shall be paid by warrants drawn against the fund created from fees collected by the board and paid into the state treasury, and against that fund only. The Legislature could, at any time, provide a different method for paying the salaries and expenses of this board by amending Section 13525 or by repealing it and enacting a new law in lieu thereof, but until it does so, Section 13525, Revised Statutes 1929, remains the law of the State. We cannot escape the conclusion that if Section 13525, Revised Statutes is still the law, and if it provides that the salaries and expenses of the board shall be paid out of the fund created from the fees collected by the board, and out of that fund only, the attempt to appropriate money out of the general revenue fund to pay any part of such salaries or expenses is contrary to the existing law of the State, as declared in Section 13525, supra.

It cannot be said that the act appropriating $3,000 from the general revenue fund to the Board of Barber Examiners Fund amounted to an amendment of Section 13525, Revised Statutes 1929. It does not attempt to amend that section. Its sole purpose was to appropriate $3,000 from one fund to another. It reads as follows:

"There is hereby appropriated out of the state treasury, chargeable to the general revenue fund, the sum of three thousand ($3000) dollars to the Board of Barber Examiners Fund."

Besides, legislation of a general character cannot be included in an appropriation bill. If this appropriation bill had attempted to amend Section 13525, it would have been void in that it would have violated Section 28 of Article IV of the Constitution which provides that no bill shall contain more than one subject which shall be clearly expressed in its title. There is no doubt but what the amendment of a general statute such as Section 13525, and the mere appropriation of money are two entirely different and separate subjects. [State ex rel. Hueller v. Thompson, State Auditor, 316 Mo. 272, 289 S. W. 338.]

Relator makes the further contention that if Section 13525, Revised Statutes 1929, be construed as meaning that the *per diem* and expenses of the board cannot be paid out of any fund except the fund created from fees collected by the board and paid into the state treasury, such a construction would not avail respondent in this proceeding.

Relator's argument in support of this contention, taken from his reply brief, reads as follows:

''For as we pointed out in our original brief, the fees which have been collected and paid into the State Treasury by the Board far exceed the expenses and compensation to which they are entitled under said Section 13525. On February 28, 1933, the General Assembly, owing to an emergency, transferred the funds which had accumulated from the fees collected by the Board, $25,308.60, to the General Revenue Fund. [Laws 1933, p. 415.] If the Legislature could not appropriate money from the General Revenue to pay the expenses and *per diem* of the members of the Board, then by the same token it could not transfer to the General Revenue the fund set apart by law for payment of the expenses and compensation of the Board. So that the appropriation of $3,000 for the uses of the Board was in legal contemplation an appropriation from the Board of Barber Examiners Fund then commingled with the General Revenue.''

We do not agree with relator's contention on this point. Section 13525, Revised Statutes 1929, which provides that the salaries and expenses of the board shall be paid by warrants drawn on the fund created from fees collected by the board and paid into the state treasury, makes the following further provision:

''. . . and any surplus remaining in said fund annually after payments above authorized shall be paid into the public school fund of this State.''

By the express provisions of Section 13525, Revised Statutes, any surplus remaining in the Board of Barber Examiners Fund at the close of the years 1931 and 1932 passed to the public school fund of the State. We recognize the right of the Legislature to provide by law that the surplus in such fund shall be transferred to the general revenue fund instead of the public school fund, but the act of February 28, 1933, which purports to transfer to the general revenue fund all sums of money in the state treasury to the credit of the Board of Barbers Fund, etc., would not have the effect of transferring a surplus remaining in such fund for the years 1931 and 1932, the title to which had by law passed to and vested in the public school fund before the transfer act of February 28, 1933, was passed. This act does not purport to transfer any definite amount of money to the general revenue fund. It simply directs the State Treasurer to transfer to the general revenue fund all sums of money in the state treasury to the credit of the numerous funds named in

the act, including the Board of Barbers Fund. The fact, if it be a fact, that the records had not been adjusted to show that the surplus remaining in the Board of Barbers Fund at the close of 1931 and 1932 had been paid into the public school fund of the State, would not change the legal status of the surplus remaining in that fund at the end of each year. By express provision of Section 13525, Revised Statutes 1929, such surplus became the property of the public school fund with the ending of each year. It results that the act of February 28, 1933, did not transfer the $25,308.60 from the Board of Barbers Fund to the general revenue fund, because that amount was not in the Board of Barbers Fund at that time. It had become the property of the public school fund of the State before the act of February 28, 1933, was passed. The only possible effect that act could have, so far as this case is concerned, was to transfer to the general revenue fund, that part of the $25,-308.60 which was collected by the board during January and February, 1933, which, no doubt, was a very small part.

It results that relator's contention that the appropriation of $3,000 from the general revenue fund for use of the board was, in legal contemplation, an appropriation from the Board of Barber Examiners Fund then commingled with the general revenue, must be denied.

As the conclusion we have reached necessarily disposes of the case, a discussion of other questions raised becomes immaterial.

For the reasons stated, our alternative writ heretofore issued should be quashed and a peremptory writ denied. It is so ordered. *Gantt, Tipton, Hays* and *Atwood, JJ.*, concur; *Leedy, J.*, dissents in separate opinion; *Ellison, J.*, dissents and concurs in dissenting opinion of *Leedy, J.*

LEEDY, J. (dissenting).—I am unable to agree to the result reached by the majority opinion because I think it does not properly construe the statute providing for the payment of the expenses of the board in question. [Sec. 13525, R. S. 1929, sec. 13525, Mo. St. Ann., p. 637.] The holding that the board is required to be *wholly* self-sustaining seems to me to be an altogether too narrow and restricted construction of the statute. To give the effect ascribed to it by the majority holding there must be read into the law a legislative intent not apparent on its face, nor present, I think, by fair implication. The section in question provides: "All moneys collected by the board or its treasurer shall be paid into the state treasury, there to constitute a fund for the purpose of carrying out the provisions of this chapter. The State Auditor is hereby directed to issue his warrants monthly, upon the State Treasurer out of this fund only, for the payment of the salaries, office and all other necessary expenses of said board."

By such provisions I think the Legislature had in mind and intended that the board should be self-sustaining only insofar as its operations might make it so. If the Legislature had intended otherwise, and that the board should be wholly self-sustaining from fees earned by it, and the State could in no event contribute to its operations, such intent would have been more aptly expressed. I think the correctness of this proposition is attested by the provisions of the several acts creating some of our other state agencies, for example, and to mention only a few: The State Board of Embalming, the State Board of Dental Examiners, the State Game and Fish Department, and the State Board of Accountancy, as to each of which, it is, respectively, provided:

"All expenses, salary and *per diem* to members of this board (of Embalmers) shall be paid from fees received under the provisions of this chapter, *and shall in no manner be an expense to the State.*" [Sec. 13542, R. S. 1929.]

"And no part of said salaries or expenses (of the Board of Dental Examiners) *shall at any time be paid out of any funds in the state treasury.*" [Sec. 13573, R. S. 1929.]

"The liability of the State . . . shall be limited to the amount of moneys in the state game protection fund, *and in no event shall the State pay out any such salaries or expenses, or be liable in any way therefor, except to the extent of such game protection fund.*" [Sec. 8304, R. S. 1929.]

"From the fees collected the board (of Accountancy) shall pay all expenses incident under this chapter: *Provided,* that no expense incurred shall be a charge against the funds of the State." [Sec. 13712(f), R. S. 1929.]

But the language of Section 13525, supra, does not, in my judgment, exclude or repel the idea that the fund so created might not be augmented by an appropriation out of the general revenue by the Legislature. Furthermore, there is a presumption that a new law relating to a given subject was enacted with reference to the former law, so that we are aided, although not controlled, by a legislative construction of the general act in harmony with its action in making the appropriation in question.

I think it was entirely competent for the Legislature, as the depository of the legislative power, and in the exercise of its plenary power over funds raised by general taxation, to determine that the public welfare demanded an additional appropriation to the board in question, and that it had capacity to make the same out of general revenue for the objects mentioned. The functions of the board relate exclusively to the public health. The appropriation to it was made at an extraordinary session of the General Assembly convened for the purpose of dealing with the emergency then existing, and, like

every other act òf the Legislature, is entitled to the presumption in favor of validity until its invalidity is màde to appear beyond a doubt. [State ex rel. v. Aloe, 152 Mo. 466, 54 S. W. 494.]

For these reasons, I dissent. *Ellison, J.,* concurs.