EDUARDO ORTIZ REYES ET AL., Petitioners-Appellees-Appellants, v. LESLIE A. MACLEOD, AUDITOR OF PUERTO RICO, Respondent-Appellant-Appellee.

No. 7935.    Argued December 14, 1939.—Decided May 28, 1940.

R. Martínez Nadal, Miguel A. García Méndez, Celestino Iriarte, F. Fernández Cuyar and H. González Blanes for petitioners-appellees-appellants.    George A. Malcolm, Attorney General, E. Campos del Toro, Assistant Attorney General, and E. Córdova Díaz, Deputy Attorney General, for respondent-appellant-appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

On behalf of themselves and such other persons who might be in a similar condition, Eduardo Ortiz Reyes and José Peña brought an injunction suit whereby the Auditor of Puerto Rico should be ordered to abstain from disapproving, retaining, or interrupting in any way the payment of salaries of the petitioners or other persons represented

by them, all with reference to Act No. 324 of May 15, 1938 (Session Laws, p. 571). That act fixed a certain number of persons whose duties were defined and salaries ordered to be paid thereunder. The Legislature either relied on the Joint Resolution of 1917 to support its action or specifically named and defined certain officers who were to be paid. There is also a provision that temporary employees shall be paid out of the appropriation "Incidental Expenses" of the Senate and the House. The Act of 1938 *supra* was in point of fact the legislative appropriation bill for the fiscal year 1938–1939.

The Auditor, through the office of the Attorney General, answered. The facts were all agreed upon by stipulation signed by the parties.

The District Court of San Juan by injunction upheld the act of the Legislature in so far as the duties of the employees named therein were defined by the Appropriation Bill or any other previous act or resolution, but refused to approve certain other employees known as temporary ones whose salaries were not specially defined in the budget, but were to be fixed by the President of the Senate and the Speaker of the House.

The Auditor appealed from the judgment of the lower court in so far as it sustained the injunction. The particular persons whose salaries were not ordered to be paid, so to speak, also appealed. Their attorneys obtained a number of extensions of time for filing the brief but never filed it. We think it will become clear that whether the opinion of the lower court was upheld or not these latter appellants have not made out a case.

The controversy turns, as agreed upon by the parties, upon the interpretation of the following paragraphs of section 34 of the Organic Act:

"No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much

thereof as is revived, amended, extended, or conferred shall be reenacted and published at length.

. . . . . . . . .

"The Legislature shall prescribe by law the number, duties, and compensation of the officers and employees of each house; and no payment shall be made for services to the Legislature from the Treasury, or be in any way authorized to any person, except to an acting officer or employee elected or appointed in pursuance of law.

. . . . . . . . .

"The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."

The Auditor seems to be maintaining at times that the General Appropriation Act can not be considered as originating in a bill in the sense that the word "bill" is generally used in the Organic Act. It does not have to be introduced within forty days and several exceptions are made in its favor. The Auditor, however, really admits that for certain purposes the General Appropriation Bill should be considered as a bill, inasmuch as it must be considered in committee and reported back to the separate Houses. A number of courts have held that the General Appropriation Bill may create certain offices or employments and that it would be absurd to require that every incidental officer of the Government should be named and have his duties defined in a separate bill.

Some of the provisions *supra* have been discussed recently in: *De la Vega* v. *Sancho Bonet, ante,* 722; *Soto Zaragoza* v. *MacLeod, ante,* 775; and *Nazario* v. *Winship, ante,* 804, and *Ugarte* v. *MacLeod, ante,* \_\_\_\_.

We think that the principal contention turns upon the so-called paragraph 15 of section 34 of the Organic Act which we shall copy again:

"The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and

judicial departments, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."

We do not have to trace the history of these various constitutional provisions. It has been very well done both in the opinion of the lower court and in the brief of the Auditor. Some of the cases which sustain the viewpoint that the budget may create a certain number of offices are as follows: *Commonwealth ex rel. Greene* v. *Gregg,* 164 Pa. 427, 29 Atl. 297; *State* v. *Clausen,* 139 P. 653, and *Lewis* v. *Colgan,* 47 P. 357.

We shall copy a few paragraphs from the *Greene* case, *supra:*

"The sole question presented is whether the item of the general appropriation bill of 1893, appropriating a sum 'for the payment of the salary of a clerk in the offices of the prothonotaries of the Supreme Court,' etc., is a valid authority to the auditor general and state treasurer to issue and pay warrants for that purpose. The learned court below held that as the compensation of the prothonotary is fixed by the acts of 22d February, 1821, and 2d April, 1868, and no new duties are imposed by the present act, it was a mere gratuity, and in violation of the constitution. In so holding, however, the learned court was careful to say that it had 'no doubt that the legislature could legally create the office of clerk to the prothonotary of the supreme court, and provide for his compensation by a salary, just as they could by law increase the fees or compensation of the prothonotary himself, but in either case this would have to be done by a separate act.' This position is also conceded by the appellee in the argument of the present case. It is uncontroverted, therefore, that the legislature could do the substantial thing, and the only question is whether it could do so in the present form. In general, it will not be disputed that the legislature is the exclusive judge of the form in which its enactments shall be put, and its mandate in that respect cannot be questioned, unless it transgresses a plain prohibition in the constitution. The only provision invoked here is section 15 of article 3: 'The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the commonwealth,' etc. The history and purpose of that section are well known. It was aimed

at the objectionable practice of putting a measure of doubtful strength, on its own merits, into the general appropriation bill— in legislative phrase, 'tacking it on as .a rider,'—in order to compel members to vote for it, or bring the wheels of government to a stop.... General appropriation bills, from their nature, usually cover a number of items, not all relating strictly to one subject. They were therefore excepted from the requirement of section 2, and this exception necessitated the special section 15 relating to them. The object of both is the same. Is the present measure within the mischief that was intended to be prohibited? The instances cited by the appellant, covering a period of 20 years since the adoption of the constitution, show the legislative understanding on the subject; and, we may fairly infer, that of the executive, also, as the various acts cited were approved by the governor. Such understanding and practice are not, of course, binding on the judiciary, who are the ultimate authority in the interpretation of the constitution; but, as the view of the two co-ordinate branches of the government, they are entitled to respectful consideration and persuasive force, if the matter be at all in doubt. It cannot be assumed that the constitution meant to compel the legislature even to supervise all the details of the government. That is properly the function of the executive and judicial branches. What work there is to be done, and what clerical force is requisite to do it, is a question of detail, as to which much must necessarily be left to the head of each department. It is clearly the legislative province to keep a general control over the expenditure of the public funds, but this it does so long as no money is paid out without a previous appropriation for that purpose. While it thus holds, the purse strings, it controls the whole subject as completely as its proper functions under the constitution demand. In passing general appropriation bills, the constitution limits them to the 'ordinary expenses of the executive, legislative, and judicial departments,' and some other enumerated matters, and every valid appropriation in this form must appear to be reasonably within the description of 'ordinary expenses'; but it would be sticking in the bark to require a separate bill to be passed every time an additional clerk was to be appointed in a public department. In regard to the particular item under consideration, it appears to be intended to pay for part of the regular and ordinary work of the offices named, and therefore to be for their ordinary expenses. It is a recognition by the legislature that the prothonotary cannot do the whole work of his office proprio manu, and an authority to him to have a portion

of it done at the public cost. By such recognition and authority, it becomes a part of the ordinary expenses of his office, and that his office is a part of the judicial department of the commonwealth does not admit of question. As already said, it is conceded on all hands that the legislature had ample power to do the substantial thing that it did, to wit, authorize the appointment of a clerk in the office of the prothonotary, and provide for his salary out of the public treasury; and as the purpose of such appointment, and the duties of the appointee, were to secure the performance of the regular and ordinary work of the office, we are of opinion that the legislature might constitutionally do it in the form they did, by an item in the general appropriation bill for the judicial department."

And see *State* v. *Clausen, supra,* and *Lewis* v. *Colgan, supra,* cited by the court below.

Cases which have held the opposite are as follows: *Sellers* v. *Frohmiller,* 24 P. (2d) 666; *Carr* v. *Frohmiller,* 56 P. (2d) 644; *State* v. *Eggers,* 136 P. 100; *Chicago Title & Trust Co.* v. *Schwartz,* 171 N. E. 169; *Bryan* v. *Menefee,* 95 P. 471; *People* v. *District Court,* 48 P.R.R. 479; *State* v. *Thompson,* 289 S.W. 340; *State* v. *Smith,* 75 S.W. (2d) 828.

In the case of *People* v. *District Court, Hon. Charles E. Foote, Judge,* 48 P.R.R. 479, this court held that the office of municipal judge could not be created by the General Appropriation Bill. After discussing the law in Pennsylvania, and quoting from *Commonwealth* v. *Barnett,* 48 Atl. 976 (1901) this court said:

"In accordance with these provisions, which are similar to those in force in Puerto Rico, the only appropriations which have a place in the general appropriation act are those for the ordinary expenses of the department of the government, for the payment of interest on the public debt, and for public schools. And it is natural that this be so, in order that the purpose of the general prohibition may not be defeated, and the results sought by it may be obtained. Without these limitations, the general appropriation act could be the door through which matters of general legislation might pass without the opportunity of being fully and openly discussed.

"In the instant case, the provision which is attacked is not confined to fixing an appropriation to cover an ordinary expenditure

842

of a department of the Government. It goes much further, since it creates an important office such as that of Municipal Judge At Large, and provides, in addition, that he must be a lawyer, and that he may be designated by the Attorney General to act in cases of disqualification, vacancy, or absence of a municipal judge. This is legislation of a general character which may not be included in an appropriation bill. *Constitutional Defense League* v. *Waters*, 164 A. 613, 309 Pa. 545; *State ex rel. Davis* v. *Smith*, 75 S. W. (2d) 828.''

The *Foote* case *supra* was an extraordinary appropriation and not for any ordinary office. Necessarily as the *Greene* case shows, it is only the ''ordinary expenses'' of the government that may be covered by the appropriation bill. We hold that employees whose jobs arise in the ordinary course of government may be created by the general appropriation bill. Such positions must be, however, within the ''ordinary expenses'' of one of the departments. If in any case it should appear that certain employments were unnecessary, mandamus could not lie. The government does not convince us that these employees appellees were unnecessary, and the judgment in their regard must be affirmed.

The other appeal is likewise affirmed.