STATE of Missouri ex rel. John R. IGOE, Chairman, Labor and Industrial Relations Commission; George E. Taff, Member, Labor and Industrial Relations Commission; Herbert L. Ford, Member, Labor and Industrial Relations Commission, Respondents,

v.

Stephen C. BRADFORD, Commissioner, Office of Administration, State of Missouri, Appellant.

No. WD 31397.

Missouri Court of Appeals, Western District.

Dec. 30, 1980.

Motion for Rehearing and/or Transfer Denied Feb. 2, 1981.

John Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for appellant.

Charles B. Fain, Jefferson City, for respondents.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

This controversy was generated when appellant, Commissioner of the Office of Administration of Missouri, ordered warrants for payment of respondents' salary in September 1979 reduced to the monthly equivalent of $28,000 per year. Proceeding in mandamus, respondents, the commissioners of the Labor and Industrial Relations Commission of Missouri, sought the court's writ to compel payment of their salary at the annual rate of $40,000. The circuit court issued its alternative writ and the pleadings thereafter filed framed the issue as a contest of the amount of salary respondents are entitled to receive under statutes applicable to their office. Appellant also filed a counterclaim asking judgment against the commissioners for repayment of alleged salary overdisbursements between January 1978 and August 1979 when the commissioners were paid at the $40,000 annual figure.

The circuit court ordered the alternative writ made peremptory, made no disposition of the counterclaim and entered judgment with findings and conclusions. The Commissioner of Administration appeals.

The facts of this case are not in dispute. The sole question is the interpretation to be given § 8.1 of the Omnibus State Reorganization Act of 1974 as amended in 1977 by House Bill 841 (§ 8.1, Appendix B, RSMo 1978). Respondents contend their salary was thereby increased from $28,000 annually to $40,000 and the circuit court so found. Appellant argues that the trial court erred in relying on extraneous evidence to construe a statute which is unambiguous, and further contends that respondents were, in any event, precluded by Art. VII, § 13 of the Missouri Constitution from an increase in compensation during their term of office. We agree and reverse.

Prior to January 1, 1978, members of the Labor and Industrial Relations Commission received compensation at the rate of $28,000 annually and each of respondents was so paid to that date. From January 1978 to September 1979, however, respondents' sal-

ary was paid at the increased rate of $3333.33 monthly or $40,000 annually, presumably in reliance on the amendment to § 8 of the 1974 Reorganization Act adopted by the general assembly in 1977 effective January 1, 1978. The increment of $12,000 per year to each commissioner's salary was funded by an appropriation from general revenue commencing in 1978.

In August of 1979, appellant Bradford apparently entertained some doubt as to the effect of the 1977 amendment on the salaries of respondent commissioners and he therefore requested an opinion from the attorney general as to the correct statutory salary then effective. The attorney general responded that total compensation for members of the Labor and Industrial Relations Commission remained at $28,000 annually and had not been increased by the 1977 act of the legislature. Respondents' salary was thereupon reduced as of September 1979 to the former rate in effect before January 1978 and this suit followed. At issue is the entitlement of respondents to salary at an increased rate commencing January 1, 1978 and, if they be found not entitled to the salary escalation, their obligation to repay excess sums overpaid from January 1978 through their respective terms in office or to September 1979.[1]

Initially, respondents have raised the issue of jurisdiction, challenging entitlement of this court to entertain the appeal on the notice of appeal filed by the attorney general. The question arises on the following assertion of facts. Respondent below and the nominal appellant here is the Commissioner of Administration of Missouri, Bradford, against whom respondents sought mandamus to compel performance of an official ministerial act—issuance of warrants on funds appropriated by the general assembly for respondents' salary. Presumably at Bradford's request, the attorney general undertook defense of the mandamus action. The notice of appeal to this court and proceedings here to date have

been conducted on Bradford's behalf by the attorney general.

Respondents contend that on the day following rendition of the circuit court judgment favorable to their claims, Bradford instructed the attorney general to pursue no appeal of that judgment because he was satisfied with the result. Respondents therefore argue that Bradford cannot be an appellant here contrary to his express instruction to his counsel, that the attorney general is not a party to the litigation and has no independent standing to prosecute the appeal and that the cause is therefore mooted for want of an aggrieved party.

■ Respondents' contention as to any position which Bradford may have adopted regarding this appeal and the consequences of a disagreement between Bradford and the attorney general are not before the court because there is no record confirming respondents' assertion. Respondents' brief reproduces a copy of a letter from Bradford to the attorney general containing his instruction that no appeal be taken, but the document appears nowhere else in the court's file and there is no record of any other action taken by Bradford to enforce his request or to disassociate himself from the appellate proceedings. Respondents assume that a viable issue on this account is raised, but issues may not be presented based solely on matters appearing in a party's brief and neither in evidence nor in the transcript. *Warren v. Drake*, 570 S.W.2d 803, 807 (Mo.App.1978); *City of Joplin v. Village of Shoal Creek Drive*, 434 S.W.2d 25, 28–29 (Mo.App.1968).

The attorney general in his briefs notes the above deficiency in the record but does not take exception to the claim that he was, in effect, directed by Bradford not to appeal the circuit court judgment. This contention by respondents that the circuit court judgment is insulated from appellate review by the apparent cooperative acquies-

---

1. We note from the Official Manual, State of Missouri, 1979–1980, page 711, that respondent Taff was appointed for a term expiring June 27, 1980. Whether he or other commission members have received additional salary payments at the $40,000 annual rate after September 1979 does not appear.

cence of their nominal opponent in a result favoring respondents' claim is of significant dimension. To dispel any doubt as to the validity of the decisional process in the case, we therefore consider the point ex gratia.

Beyond dispute, Bradford appears in this litigation as a party solely because he occupies an official position, state commissioner of administration. Respondents in their action seek to enforce performance by Bradford of his official duty to order disbursement of state monies appropriated by the legislature for salary. The funds at issue are from the state treasury and it is therefore the state which gains or loses by the result in the case. No claim is made against Bradford personally. To the extent that respondents have stated a cause of action against Bradford in his official capacity, the action is one against the State of Missouri. *Gas Service Co. v. Morris,* 353 S.W.2d 645 (Mo.1962).[2]

▮ Sections 27.050 and 27.060, RSMo 1978 confer authority on the attorney general as to litigation involving the state. By these statutes, the attorney general manages all appeals in cases where the state is a party and the attorney general is charged with the duty to enforce the rights of the state. It is for the attorney general to decide where and how to litigate issues involving public rights and duties and to prevent injury to the public welfare. *State ex rel. Taylor v. Wade,* 360 Mo. 895, 231 S.W.2d 179 (banc 1950). Bradford was and is no more than a nominal party as representative of the state by reason of the office he holds. The attorney general and not Bradford had the responsibility and the authority to accept the decision of the circuit court or to seek review by appeal. Respondents' contention that Bradford could superintend and direct the course of the litigation is without merit. The cause is properly before this court, albeit without the active participation of Bradford.

▮ Considering now the issue in contest, the amount of compensation lawfully payable to commissioners of the Labor and Industrial Relations Commission after January 1, 1978, appellant challenges first the conclusion of the trial court that amended § 8.1 of the Reorganization Act is ambiguous and thus amenable to judicial construction. As noted above, the vehicle of a petition in mandamus does not ordinarily serve to resolve issues centered on an ambiguous statute because by definition the right to be enforced in mandamus must be clear and unequivocal. The writ in mandamus does not issue except where the ministerial duty to be coerced is simple and definite arising under conditions admitted or proved and imposed by law. *State ex rel. Phillip v. Public School Retirement System of City of St. Louis,* 364 Mo. 395, 262 S.W.2d 569 (banc 1953).

The parties here appear to treat this case as one for declaratory judgment. In respect to interpretation of the statute, the issue has been fully briefed and argued and the form of mandamus presents no obstacle to final adjudication of that question. Certainly the respondents are concerned for various reasons that the issue be decided without resort to a new action in different form. Under these particular circumstances and without any inference that sanction be given to mandamus for resolution of controverted claims, the case will be decided on the merits.

Some history as to previous amounts and sources of compensation for commissioners occupying offices similar to the present positions of respondents bears review at the outset because of statutory provisions peculiar to the office of commissioner of the labor and industrial relations commission and its predecessors. From 1945 until 1957, the salary of commission members was $7500 per year with funding provided of $3000 from the unemployment compensation administration fund and $4500 from general revenue. Section 286.030, RSMo 1978. In 1957, compensation was increased by $2500 to $10,000 annually under the pro-

**2.** Neither appellant nor respondents have raised and we do not consider potential issues as to whether the commissioner of administration is the proper state officer to respond to the salary claim of respondents or to pursue the claim for recoupment of alleged overpayment.

visions of § 287.147, RSMo 1978 [3]. The salary remained at this figure until 1965 when it was increased to $12,000 per year by § 290.461, RSMo 1978, which added $2000 payable from general revenue. In 1967, the salary was increased again to $16,000 per year by § 286.095, RSMo 1978, which provided $4000 payable from the fund for the support of the administration of the workmen's compensation law for additional duties. The final increase in this series was effected by Laws 1971 when the commission members were charged with the responsibility for administering the Occupational Safety and Health Act of 1970 and were awarded additional compensation of $4500 raising the total salary to $20,500. Section 286.121, RSMo 1978.

The 1974 Reorganization Act, *supra*, abolished the former industrial commission and the board of rehabilitation, created the labor and industrial relations commission and transferred to it the powers, duties and functions formerly vested in numerous other boards and commissions. Those formerly serving as members of the industrial commission were designated to serve the remainder of their appointed terms as commissioners of the new labor and industrial relations commission. For the added duties of the new position, the commissioners were awarded compensation of $10,000 per year in addition to other compensation allowed by law. Such "other compensation" was that provided from the sources and for the duties described above with the consequence that a commissioner's salary commencing in 1975 was $28,000 derived as follows:

| | |
|---|---|
| § 286.030 | $ 7500 |
| § 290.461 | 2000 |
| § 286.095 | 4000 |
| § 286.121 | 4500 |
| § 8.1 of 1974 Act | 10000 |

In an apparent attempt to collate the various salary statutes applicable to the new position of commissioner of the labor and industrial relations commission, § 8.1 of the 1974 Reorganization Act included the following provision:

"No member of the labor and industrial relations commission shall receive more than twenty-eight thousand dollars annually from all sources of compensation."

The 1977 amendment which is the crux of this case and upon which respondents rely as the authority for an increase in their salary from $28,000 to $40,000 per year modified the above quoted sentence in § 8.1 by substituting the words "forty thousand dollars annually" for "twenty-eight thousand dollars annually" but with no other change in that section and with no change in the other compensation provisions appearing in §§ 286.030, 286.095, 286.121 and 290.461, RSMo 1978. Thus, the sources of compensation for the commissioners by statute remained as formerly at a total amount of $28,000 but the ceiling on aggregate permissible pay was raised to $40,000.

Respondents contended below and the trial court found that the amended § 8.1 is ambiguous because (1) the apparent new salary level of $40,000 fails to conform to existing statutes providing salary sources which total only $28,000, and (2) two different interpretations of the statute were evidenced by the attorney general's opinion on the one hand that no salary increase was enacted and an appropriation by the legislature on the other to fund payment of the increase. On the assumption of ambiguity, the trial court proceeded to construe the statute from the entire context of the enactment, the legislative history and the contemporaneous circumstances and concluded that the legislature intended to increase the commissioners' salary to $40,000 in conformity with similar salaries provided other state officials in the same act. The trial court gave effect to this construction by ordering payment to respondents of their salaries at the increased rate.

While respondents and the trial court in its judgment correctly cite and follow authorities applicable where ambigu-

---

**3.** The Omnibus State Reorganization Act of 1974, *supra*, abolished the board of rehabilitation and the compensation formerly paid to the commissioners pursuant to this section from the workmen's compensation fund was discontinued thereafter.

ous statutes must be construed, they have adopted the faulty premise that the statute here in question is ambiguous. It is significant that the statute does not purport to set respondents' salary at any fixed rate, only to establish a maximum not to be exceeded. From the history and somewhat unique structure of the duties and sources of compensation for commission members as detailed earlier in this opinion, it is apparent that additional duties or increased salary, or both, depend not alone on the statute in question but upon the collective language of five separate enactments. Thus, the revision in the maximum allowable salary from various sources without a corresponding increase in the sources creates no internal statutory conflict so long as the aggregate total of the sources does not exceed the maximum. The legislature has simply provided an increased salary range available as and when the funding sources are correspondingly altered.

The actual grounds for respondents' argument that the statute is ambiguous lie in external factors. They point to contemporaneous increases in salaries of comparable officers to the $40,000 rate as well as a similar increase in the salary paid the director of the department of labor and industrial relations. They suggest that the legislature obviously intended to increase their salary to $40,000 as otherwise the amendment increasing the maximum salary was a purposeless enactment. In construing the statute, they argue that this legislative intent, further evidenced by appropriation of funds to pay the increased salary, should be effectuated by judicial construction to remedy deficiencies which inartful or careless legislative action has produced.

Even if it be assumed that the external factors cited by respondents generate an opportunity for judicial construction of the statute in question, the result they seek cannot be accomplished because the court is limited by what the legislature has enacted, not what may have been intended or what may be inferred.

█ Provisions not plainly written in the law or necessarily implied may not be added by a court under the guise of construction to accomplish an end the court deems beneficial. *Wilson v. McNeal*, 575 S.W.2d 802, 809 (Mo.App.1978). Judicial construction gives effect to legislative intent from what the legislature said and not from what the legislature may have intended to say or inadvertently failed to say. *United Air Lines, Inc. v. State Tax Commission*, 377 S.W.2d 444, 448 (Mo. banc 1964); *Richards v. Stuckenberg*, 478 S.W.2d 405 (Mo.App.1972). If the provisions of a statute are express and unambiguous, the court is not at liberty to construe the language in accordance with the intentions of supporters or opponents of the legislation because the court functions to enforce the law as it is written. *Missourians for Honest Elections v. Missouri Elections Commission*, 536 S.W.2d 766 (Mo.App.1976).

Respondents understandably rely on the general circumstances of the legislative action taken in 1977 to adopt House Bill No. 841, the source of the change in the reorganization act increasing respondents' maximum allowable compensation. As evidenced by the title of the bill, its purpose was to create a uniform system of compensation for state department directors and other state officials. There can be little doubt of the apparent intent of the legislature to provide for respondents the same salary increase given other officers, particularly in view of the express increase to $40,000 adopted for the director of the labor and industrial relations commission. It is equally clear that legislation necessary to execute this intention was not adopted because the general assembly failed to augment the commissioners' statutory sources of compensation beyond the amounts which had earlier prevailed. The act as adopted does no more than authorize a future increase in respondents' salary to a maximum of $40,000 as and when the legislature by further statutory change designates in what amounts and from what sources the increment above $28,000 shall be paid.

█ The trial court determined that the statute was ambiguous, essentially because the limited revision increasing the

allowable maximum salary did not authorize or direct payment of that, or any increased amount, and the language was therefore at variance with the inferred objective to be achieved by the amendment. That finding by the trial court is not entitled to deference on appeal. Statutory construction is a question of law, not fact, and where the lower court rules on a question of law, it is not a matter of discretion. *State v. Morrow*, 535 S.W.2d 539 (Mo.App.1976). Deference to a judgment of the trial court does not obtain where the law has been erroneously declared or applied. *Rouggly v. Whitman*, 592 S.W.2d 516 (Mo.App.1979).

The failure of the legislature to enact a statute conforming to their intent and purpose of providing increased salary to respondents does not render their act ambiguous, only deficient, and affords no opportunity for the court to supply relief however meritorious may be respondents' claim or however inequitable may be the disparity between respondents' compensation and that of other state officers. The judgment of the trial court construing § 8.1, Appendix B, RSMo 1978 as providing an increase in respondents' salary to $40,000 effective January 1, 1978 was in error.

Respondents alternatively field several arguments which conjoin interpretation of the statute with subsequent action of the legislature in appropriating funds to pay the increased salary. The thrust of this contention is that even though the statute was imperfectly revised to provide the added compensation, the legislature has manifested its intention by its appropriation acts under which respondents were in fact paid from and after January 1, 1978 and the statutory deficiency, if any, has been thereby overcome.

 Appropriations of money for payment of state obligations and the amendment of a general statute are entirely different and separate subjects for legislative action. *State ex rel. Gaines v. Canada*, 342 Mo. 121, 113 S.W.2d 783, 790 (banc 1937), reversed on other grounds, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208 (1938); *State ex rel. Davis v. Smith*, 335 Mo. 1069, 75 S.W.2d 828, 830 (banc 1934). The legislature cannot fix salaries by appropriation acts but must do so by general statutes. *State ex rel. Hueller v. Thompson*, 316 Mo. 272, 289 S.W. 338, 341 (banc 1926); *State ex rel. Davis v. Smith, supra*. The right to compensation for the discharge of official duties is purely a creature of statute and a public officer claiming compensation for official duties must rely on a statute authorizing payment. *Felker v. Carpenter*, 340 S.W.2d 696, 701 (Mo.1960); *Nodaway County v. Kidder*, 344 Mo. 795, 129 S.W.2d 857, 860 (Mo.1939). If the compensation set by law for services of a public officer is more than the service is worth, the public must pay it, but if less, the officer must be content. *State ex rel. Forsee v. Cowan*, 284 S.W.2d 478, 481 (Mo.1955).

Even if it be conceded that the legislature intended to supplement and reaffirm the 1977 act amending the maximum allowable compensation to respondents by appropriating the increased salary funds from general revenue, the appropriation acts cannot, under the above authorities, be employed to raise respondents' salaries if the general statutes setting compensation fail to provide for payment of the greater sum.

As a third alternative proposition, respondents contend that legislative inaction subsequent to rendition of the judgment in this case by the trial court confirms the validity of their contention and mandates affirmance of that judgment. There reasoning to accomplish this result rests on the assertion, otherwise not supported in the record, that the legislature during its most recent session was aware of the decision reached in the case by the trial court in Cole County and if their intention under the prior legislation had not been correctly interpreted in that judgment, appropriate corrective legislation would have been introduced in the 1980 session. In support of this argument, respondents rely on the proposition that where judicial construction has been placed on the language of a statute, failure of the legislature subsequently to give additional expression of its will amounts to legislative approval of the construction adopted by the

court. *State ex rel. Howard Electric Cooperative v. Riney*, 490 S.W.2d 1, 9 (Mo.1973).

■ Even assuming that notice of the November 15, 1979 judgment reached the legislature and that the single session which followed afforded time for legislative action within the above rule, the proposition is inapplicable to this case. It is only where a statute has been construed by a court of last resort that reenactment of the same statute or a failure to adopt corrective legislation constitutes legislative adoption of that construction. The rule does not prevail where a judgment of statutory construction is by an intermediate or inferior court. *Roy F. Stamm Electric Co. v. Hamilton-Brown Shoe Co.*, 350 Mo. 1178, 171 S.W.2d 580, 583–584 (banc 1943).

■ The final aspect of the case is the counterclaim seeking reimbursement of salary overpayments accumulated from January 1978 to August 1979. As noted above the trial court entered no formal judgment on the counterclaim. While an unresolved claim ordinarily defeats appellate jurisdiction because the trial court exhausts its jurisdiction only when it has disposed of all parties and all issues in the suit, no such problem exists under the circumstances of this case. Failure to enter judgment on the counterclaim was a matter of oversight. The content of judgment on the counterclaim is foreordained by the primary judgment which required that the counterclaim be denied upon the decision made that respondents were entitled to the increased salary.

■ Where decision on other issues in the case effectively disposes of the issue not specifically adjudged, the judgment is final and appealable. *Skatoff v. Alfend*, 411 S.W.2d 169, 173 (Mo.1967). This rule prevails to determine a counterclaim even though the counterclaim is not mentioned. *Glick v. Glick*, 372 S.W.2d 912, 915 (Mo. 1963). A primary judgment necessarily decisive of the whole case is prima facie evidence that all issues have been found in favor of the party for whom the judgment was rendered. *Capitol Stores, Inc. v.*

*Storms-Green Construction Co.*, 346 S.W.2d 549, 554–555 (Mo.App.1961).

Appellant's brief asks that the case be remanded for further proceedings on the counterclaim. Potential issues arising from the counterclaim have not been briefed or argued here by respondents, the record on appeal shows nothing filed by them in the trial court regarding the counterclaim except the motion to dismiss and no factual basis appears on which this court may direct disposition of the claim. Accordingly, the case must be returned to the trial court for such separate proceedings on the counterclaim as may be deemed by the parties and by the court appropriate and consistent with this opinion.

The judgment of the trial court making its writ of mandamus peremptory is reversed and the cause is remanded with direction that the court enter its judgment quashing the alternative writ of mandamus and that it proceed to hear and determine the counterclaim of the commissioner of administration.

All concur.