

**NUMBER 13-11-126-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

---

**MICHELLE S. DAVIS,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                 **Appellee.**

---

**On appeal from the 36th District Court
of Aransas County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Vela, and Perkes
Memorandum Opinion by Justice Vela**

A jury found appellant, Michelle S. Davis, guilty of possession of heroin in an amount less than one gram, a state-jail felony.   *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(2), 481.115(a), (b) (West 2010).   The trial court assessed punishment at two years' confinement in a state jail facility.   By two issues, appellant challenges the legal

and factual sufficiency of the evidence to prove she possessed heroin. We affirm.

## I. FACTUAL BACKGROUND

Rodney Cox, an investigator with the Aransas County Sheriff's Office, testified that on May 27, 2010, he and other law-enforcement officers executed a search and arrest warrant at a trailer house "where Mr. Huett and Ms. Davis [appellant] were living at the time." When Investigator Cox approached the trailer to conduct the search, he saw Huett outside the trailer, and he saw appellant coming out of the trailer onto the front porch. Upon entering the trailer, officers found heroin and drug paraphernalia on a dresser. Specifically, Investigator Cox testified officers found: (1) a scale; (2) "a plate that had marijuana in plain view"; (3) an open metal container that had cellophane inside of it; a baggy containing a "brown powdery substance," wrapped in the cellophane; (4) a baggy containing a "brown powdery substance," which was inside the lid of a tin container; (5) a baggy containing "a measurable amount of heroin"; and (6) a baggy containing "another substance." Inside a drawer of the dresser, officers found hypodermic syringes, some cellophane wrappers, a small blue spoon, and a dime "with a brown powdery substance." On a corner shelf in the kitchen, officers found "cookers," which are used to cook drugs before people put the drugs into a syringe.

Shortly after officers found the drugs, appellant, while inside the trailer, waived her *Miranda* rights and hand-wrote a statement, which she gave to Investigator Cox. In this statement, she stated that "[e]arlier today Charles [Mr. Huett] had gave [sic] me the money to go buy heroin. I went to Houston Street and got it. I came back and gave it to him. I don't know if he used. The police came and found it and arrested him." When

2

the prosecutor asked Investigator Cox, "Did she [appellant] indicate to you which drugs she was referring to?," he said, "Yes, . . . [w]hen she was giving her statement and referring to the drugs, she was able to point with her left hand over towards the dresser." When the prosecutor asked him, "And did Ms. Davis [appellant] admit to you that the heroin that was found was the heroin she bought for Mr. Huett?," he said, "She indicated, yes, sir, she did."

Some of the items seized during the search were submitted to the Texas Department of Public Safety lab for analysis. The lab-analysis report showed that State's exhibit 15, the evidence recovered from the metal container, contained 0.60 grams of heroin. The lab report also showed that State's exhibit 14, the spoon and dime, contained 0.01 grams of heroin.

On cross-examination, when defense counsel asked Investigator Cox, "[A]t no point in the evidence inventory where you actually inventoried the drugs found you list her [appellant] as owner; only Charles Huett; is that correct?," he said, "That's correct." Investigator Cox did not have any of the seized items tested for fingerprints, and he did not have any DNA testing performed on the syringes.

Appellant did not testify at the guilt-innocence phase of her trial. The defense rested its case at guilt-innocence without calling any witnesses.

## II. DISCUSSION

### A. Legal Sufficiency

In issue one, appellant challenges the legal sufficiency of the evidence to prove she possessed the heroin seized during the search of the trailer.

3

### 1. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Consequently, we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said, quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found her guilty. *See id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). "Furthermore, '[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'" *Id.* (quoting *Urbano v. State*, 837 S.W.2d

4

114, 116 (Tex. Crim. App. 1992)), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002).

In a prosecution for possession of a controlled substance, the State must prove the accused exercised care, custody, control, or management over the substance and that the accused knew the substance was contraband. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010) (stating, "'Possession' means actual care, custody, control, or management."); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006) (stating the accused must know "the matter possessed was contraband."). "'When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.'" *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). In *Evans*, the Court of Criminal Appeals stated:

> Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called 'affirmative links' rule which protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs.

*Evans*, 202 S.W.3d at 161–62 (footnote omitted).

Relevant non-exclusive links tending to connect the accused to knowing possession include: (1) whether the accused was present when the search was conducted; (2) whether the contraband was in plain view; (3) whether the narcotic was in close proximity to and accessible by the accused; (4) whether the accused was under the

5

influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused tried to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused either owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the accused's conduct indicated a consciousness of guilt. *Id.* at 162 n.12; *Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.). The legal issue with respect to these "links" is "'whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance.'" *Evans*, 202 S.W.3d at 162 n.9 (quoting *Evans*, 202 S.W.3d at 166 (Womack, J., concurring)). "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id.* at 162.

### 2. Analysis

Appellant's connection to the heroin seized from the trailer was more than fortuitous. She was present when Investigator Cox and the other officers executed the search warrant on the trailer, and she and Huett lived there at the time of the search. A scale and some marihuana were found in plain view on a dresser inside the trailer. An open metal container was also on the dresser. This container had cellophane inside of it, and a baggy containing a "brown powdery substance" that was wrapped in the

6

cellophane. The evidence recovered from the metal container contained 0.60 grams of heroin. Inside a drawer of the dresser, officers found hypodermic syringes, some cellophane wrappers, and a small blue spoon and a dime "with a brown powdery substance." The spoon and dime contained 0.01 grams of heroin. On a kitchen shelf officers found "cookers," which people use for cooking a drug before putting it into a syringe.

In her statement to Investigator Cox, appellant explained that earlier on the day of the search, Huett gave her money to buy heroin. After buying the heroin, she returned to the trailer and gave the contraband to him. When making reference to the heroin that she bought, she pointed to the dresser where officers found heroin. Appellant admitted to Investigator Cox the heroin the officers found was the heroin she bought for Huett.

"In an unlawful possession of a controlled substance case, . . . the control need not be exclusive, but can be jointly exercised with one or more persons." *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). In this case, a rational jury could have reasonably concluded that appellant bought the heroin in question for her own use or for herself and Huett to use. Accordingly, the evidence showed appellant knew the substance was contraband (heroin) and that she exercised care, custody, control, or management over the substance.

Viewing all of the evidence in the light most favorable to the verdict, as we must, a rational jury could have found beyond a reasonable doubt that appellant intentionally or knowingly possessed the heroin that the officers found. *See Jackson*, 443 U.S. at 319; *Evans*, 202 S.W.3d at 162 n.12. We hold that the evidence is legally sufficient to support

appellant's conviction.   Issue one is overruled.

## B. Factual Sufficiency

In issue two, appellant challenges the factual sufficiency of the evidence to prove she possessed the heroin seized during the search of the trailer.   The Texas Court of Criminal Appeals has abolished factual-sufficiency review.   *See Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011).   Issue two is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
2nd day of February, 2012.