ROLLA 31 SCHOOL DISTRICT, et al.,
Appellants/Cross–Respondents,

v.

STATE of Missouri, et al.,
Respondents/Cross–
Appellants.

No. 74730.

Supreme Court of Missouri,
En Banc.

June 23, 1992.

Thomas E. Tueth, Celynda L. Brasher, St. Louis, for appellants/cross-respondents.

William L. Webster, Atty. Gen., Audrey L. Hanson, Robert Presson, Edwin H. Steinman, Jr., Asst. Attys. Gen., Jefferson City, for respondents/cross-appellants.

THOMAS, Judge.

This appeal arises from the enactment in 1990 by the General Assembly of sections 162.700 and 162.975, RSMo, mandating that school districts in Missouri provide special education services to handicapped preschoolers beginning at age three. Missouri law had previously required such a program for children five and older, but not for preschoolers. The Missouri legislation was motivated by federal legislation that offered additional federal aid to states that adopted such a program and withdrew some existing federal aid from states that did not extend the program to preschoolers.

The plaintiffs below are five school districts[1] and four individual taxpayers of two of the school districts, all referred to collectively as the "school districts." Defendants below are the State of Missouri, the State Board of Education, Department of Elementary and Secondary Education (DESE), and various state officials,[2] referred to collectively as the "state."

The Circuit Court of Cole County granted the cross Motions for Summary Judgment filed by each party. This ruling raised two important issues. Both are appealed, one by each party.

The first issue involves the validity and interpretation of a provision contained in the 1991 appropriation of more than $1 billion for the free public schools under the School Foundation Program (the major appropriation of state funds for public schools). This provision (set-aside) states that $3 million of the School Foundation Program used in prior years for a voluntary handicapped program for three- and four-year olds will now be used for the mandated program under the above sections. The school districts assert in Count III of their petition that this set-aside is invalid because it conflicts with the last sentence of previously enacted section 162.-975.2, which provides that funds for the mandated program "shall be appropriated annually for such program from general revenue funds and shall be separate from the funds apportioned for the school foundation program." The school districts contend that a general statute takes precedence over an appropriation and that, therefore, the set-aside allocating $3 million from the School Foundation Program for the mandated program is invalid. The Circuit Court of Cole County granted the state's Motion for Summary Judgment dismissing Count III, thereby ruling this first issue against the school districts, who appeal.

The second issue presents the questions of whether the failure of the legislature to provide specific, state funding for the entire cost of the mandated program violates the Hancock Amendment and whether, absent a specific appropriation such as an appropriation for categorical aid for this purpose, general unrestricted funds paid to the school districts under the School Foundation Program can be used to meet the Hancock Amendment requirements for the mandated program. The school districts made these claims in Counts I and II of their petition; the Circuit Court concluded that the Hancock Amendment was violated and, therefore, granted the school districts' Motion for Summary Judgment on Counts I and II; the state appeals from this determination.

## I.

### The General Statute v. The Appropriation Set–Aside

■ Special education services for handicapped preschool children were mandated by the General Assembly in 1990 by amending section 162.700.1 to read, in pertinent part, as follows:

> 1. The board of education of each school district in this state, except school districts which are part of a special school district, and the board of education of each special school district shall provide special educational services for handicapped children three years of age or more residing in the district as required by P.L. 99–457, as codified and as may be amended.... This subsection shall apply to each full school year beginning on or after July 1, 1991.

§ 162.700.1, RSMo Supp.1990. At the same time, the legislature made two statutory changes regarding funding for the mandated program. It amended section 162.975.2 to read as follows:

> 2. For approved classes of handicapped and severely handicapped children under five years of age, but not

---

1. The Rolla 31 School District, the Branson R–IV School District, the Ava R–1 School District, the Moberly School District, and the Fort Zumwalt School District.

2. John Ashcroft, Governor; Robert E. Bartman, Commissioner of Education; James R. Moody, Commissioner of Administration; and Wendell Bailey, Treasurer.

under the age of three, state aid shall not exceed sixty-seven percent of approved cost of the program as specified in the project application. *Funds shall be appropriated annually for such program from general revenue funds and shall be separate from the funds apportioned for the school foundation program.*

§ 162.975.2, RSMo Supp.1990 (emphasis added). It also enacted section 162.700.5, which provides:

> 5. Any and all state costs required to fund special education services for three- and four-year-old children pursuant to this section *shall be provided for by a specific, separate appropriation and shall not be funded by a reallocation of money appropriated for the public school foundation program.*

§ 162.700.5, RSMo Supp.1990 (emphasis added).

Although the mandated program was adopted in 1990, it was not scheduled to begin until July 1, 1991. Therefore, the first appropriation relating to it was a year later in the spring of 1991. The appropriation, which totaled $8,033,400.00, was contained in two sections of the appropriation bill:

> Section 2.010. To the Department of Elementary and Secondary Education
>
> For the purpose of funding distributions to the free public schools under the School Foundation Program as provided in Chapter 163 RSMo, *provided that Three Million Dollars ($3,000,-000) shall be used to continue support for existing programs for handicapped three and four year olds*
>
> From State School Moneys Fund
> (0 F.T.E.) ............. $1,140,560,000

1991 Mo.Laws 9 (emphasis added).

> Section 2.220. To the Department of Elementary and Secondary Education
>
> For the purpose of funding Special Education Programs for Handicapped Pre-School Children

> From General Revenue Fund
> (0 F.T.E.) ............. $5,033,400

1991 Mo.Laws 20.

Prior to the 1991–92 school year, section 162.700.3 allowed school districts the option of participating in a voluntary program providing special education programs to handicapped children ages three and four. During the 1990–91 school year, the school districts that participated in the optional program received $1,988,105.00 from the School Foundation Program for special education teachers and teachers' aids for three- and four-year-old students. The School Foundation Program also paid for occupational therapy, physical therapy, speech therapy, diagnostic services and transportation at an estimated cost of $1.1 million for the three- and four-year-old students participating in the optional program. Thus, in 1990–91, the year immediately preceding the effective date of the mandatory program, the 131 school districts participating in the optional special education program received approximately $3 million in categorical aid to that program from the School Foundation Program.

■ The state argues, rather halfheartedly, that under the constitutional doctrine of separation of powers contained in Article II, Section 1 of the Missouri Constitution, the legislature is entitled to supremacy in the matter of appropriations and, therefore, the courts cannot and should not intrude into this area. The state suggests that the trial court may have granted the school districts' Motion for Summary Judgment on Counts I and II on this basis. We do not believe the trial court based its decision on such a conclusion; we believe the trial court was responding to the school districts' request for an order requiring the legislature to fund the childhood special education program by a separate appropriation. The trial court was simply pointing out that, while it can and did declare the method of funding used by the legislature to be invalid, it does not have authority to direct the legislature to fund the program in any certain manner. In any event, we reject the contention that courts do not have jurisdiction to decide constitutional is-

sues in areas in which the legislature is entitled to supremacy by reason of the separation of powers doctrine under Article II, Section 1, of the Missouri Constitution. In *State ex rel. Cason v. Bond*, 495 S.W.2d 385, 389 (Mo. banc 1973), this Court said, "Courts regularly pass upon the constitutionality of acts enacted by the General Assembly and signed by the Governor. This is a proper function of the judicial branch of government and does not violate the separation of powers provision in the Constitution." *See also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). Determining the constitutionality of such a statute is not only the prerogative, but the duty, of this Court.

The school districts rely on three Missouri cases, the bedrock of which is *State ex rel. Davis v. Smith*, 335 Mo. 1069, 75 S.W.2d 828 (banc 1934), for the proposition that an appropriation that contravenes general statutory law is unenforceable[3]. Davis, a member of the Board of Barber Examiners, sought a writ of mandamus to require the state auditor to pay Davis $125 compensation for attending board meetings. An appropriation had transferred $3,000 from the general revenue funds to the Board of Barber Examiners' Fund to pay the Board's compensation. The *Davis* court construed the general statute to prohibit the payment of salaries to members of the Board from the General Fund; the statute limited the payment of salaries to the amount of revenue received by the Board during the year. Davis claimed that the appropriation statute specifically amended the general statute and, thus, payment was proper. The *Davis* court rejected this argument, holding that the act appropriating $3,000 from the general revenue fund to the Board of Barber Examiners Fund could not amend the general statute because a statute that makes an appropriation and also amends a general statute would contain more than one subject and, therefore, would violate Article IV, Section

28 of the Missouri Constitution (1875) (now in Article III, Section 23 of the Missouri Constitution (1945)). This constitutional limitation, which provides that no bill shall contain more than one subject and limits appropriation bills to appropriations only, is still good law.

It is noteworthy that in *Davis*, Judge Leedy, a long-revered member of this Court, dissented on the grounds that the general statute did not actually prohibit payment of the Board members' salaries from the General Fund, it merely preferred that such payment be made from the Board's income if both sources were available. Judge Leedy relied, in part, upon the legislature's appropriation as evidence that the apparent inconsistency between the general statute and the appropriation arose out of an ambiguity in the general statute, which could be resolved without a statutory amendment. Judge Leedy's dissent states:

> [T]here is a presumption that a new law relating to a given subject was enacted with reference to the former law, so that we are aided, although not controlled, by a legislative construction of the general act in harmony with its action in making the appropriation in question.

*Davis*, 75 S.W.2d at 832.

However, we do not believe *Davis* applies to the general statute and appropriation in the present case. The holding in *Davis* only applies to resolve a conflict between the general statute and an appropriation when it attempts to amend the general legislation. If the conflict between two statutes is less than direct, e.g., an ambiguity in the general statute, then such a conflict may be resolved by relying upon the appropriation as strong evidence of the legislature's intention in adopting the general statute. Therefore, the appropriation need not be viewed as an amendment of the general statute and the constitutional provision limiting the subject of an appropriation bill does not apply. We conclude that

---

**3.** In addition to *Davis*, the school districts also rely upon *State ex rel. Gaines v. Canada*, 342 Mo. 121, 113 S.W.2d 783, 790 (banc 1937), *reversed on other grounds*, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208 (1938), and *State ex rel. Igoe v.*

*Bradford*, 611 S.W.2d 343 (Mo.App.1980), both of which afford a general statute precedence over an appropriation based upon the reasoning in *Davis*.

the appropriation allocating the $3 million set-aside from the School Foundation Program does not directly amend the general statute adopted in the prior year.

While we have rejected the state's argument that the separation of powers doctrine prohibits this Court from reviewing the constitutionality of general statutes, we, nevertheless, acknowledge the desirability and wisdom of considering the legislature's language in the appropriation when determining its intended meaning for the general statute. We believe there is an inherent ambiguity in section 162.700.5 when it purports to prohibit funding the preschool special education program by a *"reallocation* of money appropriated for the public school foundation program," because monies from the School Foundation Program had been used to fund a similar voluntary program in prior years. We must also consider whether the $3 million set-aside meets the requirement of sections 162.975.2 and 162.700.5 that the appropriation be separate from the funds apportioned for the School Foundation Program.

The legislature was faced with three choices when it considered the appropriation of the School Foundation Program funds, knowing that $3 million from the School Foundation Program had been used for a similar voluntary program in prior years.

First, the legislature could have appropriated $1,140,560,000 for the School Foundation Program and remained silent concerning the $3 million set-aside. Such silence would, in fact, have been misleading to the taxpayers and the public because the $3 million that was previously designated for the voluntary preschool handicapped program would have been released for discretionary spending without the apparent showing of such an increase.

Second, the legislature could have appropriated $1,137,560,000 for the School Foundation Program and, likewise, remained silent about the $3 million set-aside while specifically appropriating $8,033,400 instead of $5,033,400 for the mandatory preschool program. This approach would also have been misleading because it would

have increased a line item by $3 million allocated for a new program that in the prior year was part of the School Foundation Fund. The school districts argue that the legislature should have been required to disclose a $3 million reduction in the School Foundation Fund in this instance. In fact, this disclosure would be misleading because the $3 million used for the voluntary program in the prior year was not available for unrestricted use. Thus, there really was no reduction in unrestricted funds.

The legislature's third choice was to do what it did—make a complete disclosure of the status of the $3 million, which was not actually reallocated from other programs but was transferred from the similar voluntary program of the prior year to the mandated program of the current year. We would commend, rather than condemn, the legislature for its complete disclosure of this source of funding.

Because the $3 million set-aside is not a reallocation from other uses of School Foundation Program monies, we believe that the appropriation is consistent with the previously enacted general statutes (sections 162.975.2 and 162.700.5). We affirm the trial court in its granting of summary judgment dismissing Count III of the school districts' petition.

## II.

### *Violation of the Hancock Amendment*

■ The state contends that the trial court erred in granting the school districts' Motion for Summary Judgment on Counts I and II. In this ruling, the trial court held, as a matter of law, that the failure of the legislature to fully fund the preschool special education program by specific appropriation violated Article X, Sections 16 and 21 of the Missouri Constitution, commonly known as the Hancock Amendment. Article X, Section 16 provides, in pertinent part, as follows:

The state is prohibited from requiring any new or expanded activities by counties and other political subdivisions without full state financing, or from shifting

the tax burden to counties and other political subdivisions.

Article X, Section 21 provides as follows:

The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

In July 1991, DESE sent a letter to all Missouri school districts advising them that school districts were obligated to provide special education and related services for disabled three- and four-year-old children beginning with the 1991–92 school year. The letter also pointed out that at least ten percent of the program costs must come from local school district monies. In the fall of 1991, the Missouri State Board of Education formally adopted a rule concerning the source of funding for the mandated programs, which provided, in pertinent part, as follows:

Funding of Early Childhood Special Education programs shall be from local, federal, and state sources, in the amount of ten (10) percent, twenty-three (23) percent, and up to sixty-seven (67) percent, respectively.

The school districts contend this rule violates the above-quoted sections of the Hancock Amendment.

The state responds by pointing out that it annually furnishes large sums of money to the school districts in the form of the School Foundation Program; for example, it provided $1.157 billion in fiscal year 1991–92. Although 80% of the School Foundation Fund is deposited in the Teacher's Fund, the remaining 20% (over $170 million) is unallocated and unrestricted. § 163.061, RSMo 1986. The state contends it is entitled to use these unallocated funds to meet the requirements of the Hancock Amendment.

We reject the state's position for several reasons. First, their argument proves too much; it would essentially eliminate the Hancock Amendment as a factor in public school financing, which constitutes at least 25% of the state revenue. Mo. Const. Art. IX, § 3(b). Considering only the 20% of the School Foundation Fund that is not required to be deposited in the teacher's fund, the unrestricted aid to local schools in 1991–92 was over $170 million. Comparing this with the estimated local costs of the preschool special education program, which was $1 to $4 million in 1991–92, makes it obvious that treating all of the unrestricted funds as available to support mandated programs means that as a practical matter the Hancock Amendment would not be a factor in school finance. Because the public policy of Missouri places the control of the public schools in local school boards, it is unlikely that the legislature would ever mandate enough programs that the comparison of costs to the unrestricted funds would ever become a meaningful test. Moreover, the great excess of funds available to legitimize state mandated programs would actually work contrary to Missouri's public policy since this factor would encourage rather than discourage state involvement in the administration of the public schools.

Second, the use of the unrestricted funds to finance the mandated program would actually defeat one of the primary purposes of the Hancock Amendment. The Hancock Amendment is designed to place in taxpayers the decisions of both determining increases in government service and raising taxes to pay for those increased services. At the same time taxpayers are protected from increased local taxes for new or increased services mandated by the state by the requirement that the state pay for such new programs. Allowing the state to mandate programs and cover their costs by unrestricted funds puts taxpayers in the same position as if they were required to raise funds for the costs of the state mandated program, at least when state aid is not dramatically increasing. If

the local entity is required to use its unrestricted funds to pay for a mandated program, it will then be forced to raise additional tax money to pay for the program previously supported by the unrestricted funds. Since funds are fungible, allowing the state to use unrestricted funds to support mandated programs is essentially the same as requiring local school districts to raise money to support a state mandated program. This defeats one of the essential features of the Hancock Amendment. We hold that the mandate of the preschool special education program violates the Hancock Amendment because the legislature failed to provide a specific appropriation to cover the full cost of the program; without a categorical appropriation for this specific purpose the unrestricted school funds do not meet this requirement.

Article X, Section 21 of the Missouri Constitution provides that a state mandated program shall not be required "unless a state appropriation is made ... to pay the county or other political subdivision for any increased costs." We believe this means what it says; it requires that the legislature make a specific appropriation which specifies that the purpose of the appropriation is the mandated program. For example, the appropriation in the present case of the $5,033,400 from the general fund qualifies. An appropriation providing categorical aid for this purpose as a part of the School Foundation Fund would also qualify. The $3 million set-aside in the School Foundation Fund, discussed earlier in this opinion, is sufficiently specific to qualify. However, because there is no specific appropriation to cover the ten percent of the costs allocated to the local school districts and in view of the rule adopted by the State Board of Education providing, in pertinent part, that "funding of early childhood special education programs shall be from local ... sources, in the amount of ten (10) percent ...," the mandate of the preschool special education program violates Article X, Section 21.

We affirm the trial court's granting of the school districts' Motion for Summary Judgment on Counts I and II and affirm the trial court's entry of an injunction prohibiting the state from requiring the school districts to provide special education services to handicapped three- and four-year-old students until the legislature provides a specific appropriation to fund the portion of the program not federally funded.

The state requests that this Court withhold the implementation of its ruling for some period of time to give the legislature an opportunity to make the appropriation. The state suggests this should be in the nature of the delay that occurred in *Jones v. State Highway Commission*, 557 S.W.2d 225, 231 (Mo. banc 1977). We do not believe the state has shown circumstances that would justify withholding the enforcement of the Missouri Constitution.

### III.

### *Other Relief Requested*

In their brief on the first issue, the school districts request that this Court require the state to distribute $3 million to the public schools under the School Foundation Formula to replace the $3 million that the school districts claim was improperly appropriated. We reject the school districts' prayer in this respect both because our holding on the first issue is against the school districts but also for the further reasons set forth below.

In their brief filed on the second issue, the school districts pray that the state be ordered to reimburse Missouri school districts for all local funds that the districts expended on preschool special education programs during 1991–92. In their brief filed on the second issue, the school districts pray that the state be ordered to reimburse Missouri school districts for all local funds that the districts expended on preschool special education programs during 1991–1992. The trial court did not address this prayer for relief. It is incumbent upon one seeking relief to ensure that the trial court rules upon all requests before it in order to preserve an erroneous ruling for appeal. Allegations of error that have not been presented to or expressly decided by the trial court shall not be considered on appeal. Rule 84.13; § 512.-

160, RSMo 1986. Therefore, we cannot grant the requested relief. Furthermore, the school districts have not demonstrated a legal basis for a judgment for money against the legislature; the legislature does not insure the constitutionality of its actions. The school districts likewise have not demonstrated any basis in law for the recovery of their attorneys fees. With respect to any order or judgment requiring the payment of money damages to the school districts or any order requiring any "correction" under section 163.091, judgment is entered in favor of the state and against the school districts.

We affirm.

ROBERTSON, C.J., COVINGTON, HOLSTEIN, BENTON and PRICE, JJ., and CROW, Special Judge, concur.