

# SUPREME COURT OF MISSOURI
## en banc

PLANNED PARENTHOOD OF )    *Opinion issued June 30, 2020*
ST. LOUIS REGION, ET AL., )
                                          )
               Respondents, )
                                            )
v.                                   )    No. SC98020
                                            )
DEPARTMENT OF SOCIAL SERVICES, )
DIVISION OF MEDICAL SERVICES, )
ET AL., )
                                            )
               Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable David L. Dowd, Judge

Section 208.152.1(6), (12)[1], provides that the MO HealthNet Division of the Missouri Department of Social Services "shall" make payments to authorized providers "on behalf of" Medicaid-eligible individuals for "physicians' services" and "[f]amily planning." Notwithstanding that the General Assembly appropriated money for Fiscal Year 2019 ("FY2019") to pay for these services, and notwithstanding that Planned Parenthood of the St. Louis Region and Reproductive Health Services of Planned Parenthood (collectively, "Planned Parenthood") was an authorized provider of these

---

[1] References to section 208.153 are to RSMo 2016. References to section 208.152 are to RSMo Supp. 2018. All other statutory references are to RSMo 2016.

services because it had an agreement with MO HealthNet under section 208.153.2 to do so, MO HealthNet informed Planned Parenthood that it could not reimburse Planned Parenthood for these services during FY2019 due to section 11.800 of the FY2019 appropriation bill. This provision states: "No funds shall be expended to any abortion facility as defined in Section 188.015, RSMo, or any affiliate or associate thereof." House Bill No. 2011 ("HB2011"), § 11.800 (2018).

Planned Parenthood challenged the constitutional validity of section 11.800 of HB2011, claiming it is impermissible to use an appropriation bill to amend substantive law (i.e., §§ 208.153.2 and 208.152.1(6), (12)) because this violates article III, section 23 of the Missouri Constitution. The circuit court agreed, and MO HealthNet appeals.[2] This Court has exclusive appellate jurisdiction. Mo. Const. art. V, § 3.

The central issue before this Court is whether there is a direct conflict between: (a) the language of sections 208.153.2 and 208.152.1(6), (12) requiring MO HealthNet to pay its authorized providers (including Planned Parenthood) for covered physicians' services and family planning provided to Medicaid-eligible individuals; and (b) the language of section 11.800 of HB2011 prohibiting MO HealthNet from doing so. If there is such a direct conflict, section 11.800 is invalid because article III, section 23 of the Missouri Constitution prohibits using an appropriation bill to amend a substantive statute.

---

[2] Also appealing are the Missouri Department of Social Services and the Missouri Medicaid Audit and Compliance Unit. For ease of reference, however, all appellants are referred to herein collectively as MO HealthNet.

2

The circuit court's judgment found such a conflict and declared section 11.800 invalid. The circuit court concluded this unconstitutional section should be severed, leaving the remainder of HB2011 unaffected. This Court agrees, and the circuit court's judgment in this respect is affirmed.

## Background

Missouri's Medicaid program is known as MO HealthNet, and it is administered by the MO HealthNet Division of the Missouri Department of Social Services. Section 208.152.1 provides:

> **MO HealthNet payments shall be made** on behalf of those eligible needy persons … who are unable to provide for it in whole or in part … for the following:
> …
> (6) **Physicians' services**, whether furnished in the office, home, hospital, nursing home, or elsewhere;
> …
> (12) **Family planning** as defined by federal rules and regulations; provided, however, that such family planning services shall not include abortions unless such abortions are certified in writing by a physician to the MO HealthNet agency that, in the physician's professional judgment, the life of the mother would be endangered if the fetus were carried to term[.]

§ 208.152.1 (emphasis added). As noted in this statute, the payments are made "on behalf of" the Medicaid eligible person receiving the services, but they are made to the authorized provider from which the eligible person received the services. Section 208.153.1 further provides, "Any person entitled to MO HealthNet benefits may obtain it from *any provider* of services with which an agreement is in effect under this section and which undertakes to provide the services, as authorized by the MO HealthNet division." [Emphasis added.]

3

MO HealthNet concedes that it has authorized Planned Parenthood to provide physicians' services and family planning to Medicaid-eligible individuals and that Planned Parenthood had an agreement in effect for FY2019 with MO HealthNet under section 208.153.1 to do so. Prior to FY2019 at least, this was sufficient to permit Planned Parenthood to provide those services and receive payment for them from MO HealthNet from money appropriated by the General Assembly.

For FY2019, the General Assembly again appropriated funds for the "purpose of funding physician services and related services including, but not limited to, ... family planning services under the MO HealthNet fee-for-service program[.]" *See* HB2011, § 11.455. This time, however, the General Assembly added section 11.800 to the MO HealthNet appropriation bill, HB2011. Section 11.800 provides:

> In reference to all sections in Part 1 [including section 11.455, which appropriates money for physicians' services and family planning] and Part 2 of this act: No funds shall be expended to any abortion facility as defined in Section 188.015, RSMo[3], or any affiliate or associate thereof.

As a result of this language,[4] MO HealthNet notified Planned Parenthood that it was prohibited from making any payments to Planned Parenthood for physician or family planning services rendered to Medicaid-eligible individuals during FY2019.[5]

---

[3] Section 188.015(2) provides, "**'Abortion facility'**, a clinic, physician's office, or any other place or facility in which abortions are performed or induced other than a hospital ...."

[4] MO HealthNet originally relied on section 11.715 in Part 2 of HB2011, as well as section 11.800. It since has dropped that contention, and the validity or enforceability of section 11.715 will not be addressed further.

[5] The appropriations in HB2011 pertain to obligations incurred in FY2019, which ended June 30, 2019. *See* Mo. Const., art. IV, § 28 ("No appropriation shall confer authority to incur an obligation after the termination of the fiscal period to which it relates ...."). Neither

4

Planned Parenthood filed complaints with the Administrative Hearing Commission ("AHC"). The AHC issued decisions in favor of MO HealthNet but noted it lacked authority to address Planned Parenthood's constitutional challenges. Planned Parenthood then sought consolidated judicial review of the AHC decisions in the St. Louis City Circuit Court. The circuit court entered judgment for Planned Parenthood, declaring that section 11.800 of HB2011 violates article III, section 23 of the Missouri Constitution and severing that provision from the remainder of HB2011.[6] The circuit

---

MO HealthNet nor Planned Parenthood suggests this case is moot, and the Court need not address this issue because, even if it were moot, this Court would still render an opinion under the exception recognized in *State ex rel. Peters-Baker v. Round*, 561 S.W.3d 380, 384-85 (Mo. banc 2018) (explaining an exception to the mootness doctrine has been recognized "when the issue raised is one of general public interest and importance, recurring in nature, and will otherwise evade appellate review"). Not only is the issue presented here one of general interest, it appears this issue is recurring and likely will evade review if not addressed in this case. The proof is found in House Bill No. 11 (2019), which contains the MO HealthNet appropriations for Fiscal Year 2020. There – much as it did in section 11.800 of the 2019 appropriation bill – the General Assembly added section 11.930, which provides: "In reference to all sections in Part 1 and Part 2 of this act: No funds shall be expended to any clinic, physician's office, or any other place or facility in which abortions are performed or induced other than a hospital, or any affiliate or associate of any such clinic, physician's office, or place or facility in which abortions are performed or induced other than a hospital." *See also* House Bill No. 2011 (2020), § 11.930 (same). That language is subject to the same constitutional challenge asserted against section 11.800 in the 2019 appropriation bill but, just as in the present case, it is unlikely such a challenge could be concluded within that fiscal year.

[6] The circuit court further declared the reference to section 188.015(2) in section 11.800 of HB2011, and its impact on the purpose set forth in section 11.455 of that appropriation bill, violated article IV, section 23 of the Missouri Constitution, which provides in relevant part: "Every appropriation law shall distinctly specify the amount and purpose of the appropriation *without reference to any other law to fix the amount or purpose*." [Emphasis added.] Because this Court affirms the circuit court's judgment that section 11.800 is unconstitutional under article III, section 23 of the Missouri Constitution, no purpose is served by addressing this alternative claim further, and the portion of the circuit court's judgment declaring section 11.800 unconstitutional under article IV, section 23 is hereby vacated. In addition, the circuit court rejected Planned Parenthood's other claims, but Planned Parenthood does not cross-appeal from these adverse determinations and those claims will not be addressed further in this opinion.

court taxed costs against MO HealthNet, and MO HealthNet challenges both of these determinations in its appeal to this Court.

**Analysis**

"Constitutional challenges to a statute are reviewed *de novo*." *Calzone v. Interim Comm'r of Dep't of Elementary & Secondary Educ.*, 584 S.W.3d 310, 315 (Mo. banc 2019) (quotation marks omitted). An act of the General Assembly "approved by the governor carries with it a strong presumption of constitutionality." *Hammerschmidt v. Boone County*, 877 S.W.2d 98, 102 (Mo. banc 1994). "A state legislative body has the power to enact any law not prohibited by the constitution, and the state constitution, unlike the federal constitution which is a grant of powers, is a limitation on legislative power." *State ex inf. Danforth v. Merrell*, 530 S.W.2d 209, 213 (Mo. banc 1975). "This Court will resolve doubts in favor of the procedural and substantive validity of an act of the legislature." *Hammerschmidt*, 877 S.W.2d at 102. "Attacks against legislative action founded on constitutionally imposed procedural limitations are not favored; [this Court] ascribe[s] to the General Assembly the same good and praiseworthy motivations as inform our decision-making processes." *Id*. The challenger bears the burden of establishing that an act of the General Assembly is unconstitutional. *Calzone*, 584 S.W.3d at 315. The Court will uphold the constitutional validity of an act passed by the General Assembly unless the act "clearly and undoubtedly" violates a constitutional limitation. *Hammerschmidt*, 877 S.W.2d at 102.

Article III, section 23 provides, "No bill shall contain more than one subject which shall be clearly expressed in its title, except bills enacted under the third exception

6

in section 37 of this article and general appropriation bills, which may embrace the various subjects and accounts for which moneys are appropriated." In other words, section 23 prohibits bills with more than one subject but allows a narrow exception to that prohibition for appropriation bills because such bills necessarily include multiple subjects, i.e., appropriations of differing amounts from differing accounts for differing subjects.

But to keep the narrow exception for "general appropriation bills" from swallowing the broad prohibition against bills containing multiple subjects, this Court has long recognized that this exception in article III, section 23 "limits appropriation bills *to appropriations only*." *Rolla 31 Sch. Dist. v. State*, 837 S.W.2d 1, 4 (Mo. banc 1995) (emphasis added). In other words, any bill that purports to combine appropriations with the enactment or amendment of general or substantive law necessarily contains more than one subject in violation of article III, section 23, and such a bill does not fall within the exception for "general appropriation bills." *See State ex rel. Davis v. Smith*, 75 S.W.2d 828, 830 (Mo. banc 1934) ("There is no doubt but what the amendment of a general statute such as section 13525, and the mere appropriation of money are two entirely different and separate subjects.").

In *State ex rel. Hueller v. Thompson*, 289 S.W. 338, 340-41 (Mo. banc 1926), this Court explained:

> An appropriation bill is just what the terminology imports, and no more. Its sole purpose is to set aside moneys for specified purposes, and the lawmaker is not directed to expect or look for anything else in an appropriation bill except appropriations. As to these he is charged by the Constitution to look and watch for two things: (a) The various subjects of

7

the bill; and (b) the account or accounts for which the payment of the state's moneys are being set apart. The same section and article of the Constitution forbids any bill, except as in the Constitution provided, to contain more than a single subject, and this must be clearly expressed in the title. The exceptions are two, one of which is appropriation bills ….

As has been observed in well–reasoned cases, if the practice of incorporating legislation of general character in an appropriation bill should be allowed, then all sorts of ill conceived, questionable, if not vicious, legislation could be proposed with the threat, too, that, if not assented to and passed, the appropriations would be defeated….

Our Constitution (section 28, art. 4), is the one certain safeguard against such distracting possibilities and should be strictly followed. We hold, therefore, that section 100 of the Appropriation Act, under our Constitution, is unconstitutional and void[.]

Three generations later, *Rolla 31 School District* reaffirmed that the inclusion of substantive legislation in an appropriations bill is among the evils the single subject requirement in article III, section 23 was meant to prevent.

The *Davis* court [held] that the act appropriating $3,000 from the general revenue fund to the Board of Barber Examiners Fund could not amend the general statute because *a statute that makes an appropriation and also amends a general statute would contain more than one subject* and, therefore, would violate Article IV, Section 28 of the Missouri Constitution (1875) (now in Article III, Section 23 of the Missouri Constitution (1945)). This constitutional limitation, which provides that no bill shall contain more than one subject and limits appropriation bills to appropriations only, is still good law.

*Rolla 31 Sch. Dist.*, 837 S.W.2d at 4 (emphasis added). The Court explained, however, that it takes more than some mere inconsistency between an express appropriation and the entire body of general law to constitute a single subject violation.

The holding in *Davis* only applies to resolve a conflict between the general statute and an appropriation when it attempts to amend the general legislation. If the conflict between two statutes is less than direct, e.g., an *ambiguity* in the general statute, then such a conflict may be resolved by

8

relying upon the appropriation as strong evidence of the legislature's intention in adopting the general statute.

*Id.* (emphasis added).[7]

Accordingly, the issue before this Court is whether section 11.800 violates the single subject requirement in article III, section 23 of the Missouri Constitution. If section 11.800 of the FY2019 appropriation bill HB2011 is in direct conflict with sections 208.153.1 and 208.152.1(6), (12), then it is an attempt to amend those general statutes and is unconstitutional because HB2011 contains multiple subjects, i.e., appropriations and amendments to substantive law. On the other hand, if sections 208.153.1 and 208.152.1(6), (12) are ambiguous regarding which authorized providers are eligible to receive MO HealthNet payments and which are not, there is no single subject violation because section 11.800 should be viewed only as an interpretive aid to resolve that ambiguity.

## I. Section 11.800 of HB2011 Is Unconstitutional

MO HealthNet appeals the portion of the circuit court's judgment declaring section 11.800 to be unconstitutional under article III, section 23 of the Missouri

---

[7] The parties also cite and discuss this Court's analysis of article III, section 23 in *State ex rel. Gaines v. Canada*, 113 S.W.2d 783 (Mo. banc 1937). *Gaines* was an action in mandamus by Lloyd Gaines, a qualified African American applicant to the University of Missouri School of Law, to compel the University of Missouri curators to admit him into the law school during an era of state-mandated racial segregation in education. *Id.* at 127-28. This Court held that the opportunity offered to Gaines to have his tuition paid at a law school in an adjacent state was not an equal protection violation. *Id.* at 137. In an early harbinger of *Brown v. Board of Education*, 347 U.S. 483 (1954), the United States Supreme Court reversed this Court, concluding Gaines' right to equal protection of the law had been violated. *State ex rel. Gaines v. Canada*, 305 U.S. 337 (1938). Because the rot of state-mandated racial segregation infests the entirety of this Court's *Gaines* decision, it is repudiated in its entirety and, henceforth, should no longer be cited even for the most otherwise unimpeachable legal principles.

9

Constitution. Planned Parenthood properly raised this claim first in the AHC, which lacked the authority to decide it and did not address it. *See Cocktail Fortune, Inc. v. Supervisor of Liquor Control*, 994 S.W.2d 955, 957 (Mo. banc 1999). Because it had been raised before the AHC, however, Planned Parenthood was able to reassert it in its petitions for judicial review of the AHC's determinations. As a result, even though this Court ordinarily reviews the decision of the AHC in appeals concerning petitions for judicial review, this Court reviews the decision of the circuit court when the claim involves a question the AHC could not decide, i.e., a claim that a statute is unconstitutional. *Id.*

The Court holds that nothing in the applicable portions of sections 208.152 and 208.153 is ambiguous and there is no basis, therefore, to conclude that section 11.800 of HB2011 is merely an indication of legislative intent to be used as an interpretive aid. Instead, section 11.800 is in direct conflict with the applicable provisions of sections 208.152 and 208.153, which specify plainly and unambiguously what MO HealthNet payments will cover and to whom those payments must be made.

To begin with, as set forth in full above, section 208.152.1(6), (12) provides, in pertinent part, that MO HealthNet payments "shall" be made on behalf of Medicaid-eligible individuals for "physicians' services" and "family planning." Even though section 208.152 provides only that payments shall be made "on behalf of" Medicaid-eligible individuals for covered services, section 208.153 provides that these individuals can obtain those services from any authorized health care provider, i.e., "***any provider***" that has an agreement with MO HealthNet Division to provide those services.

10

Accordingly, the payments required under section 208.152 are to be made to whichever authorized provider the Medicaid-eligible individual chose to provide the covered services. The plain language of these statutes admits of no other conclusion. Specifically, nothing in these statutes states – or even suggests – that payment for covered services "shall" be made only to some authorized providers but not others depending upon which uncovered, non-Medicaid services an authorized provider also happens to make available to its patients.

Because there is no ambiguity in sections 208.153.1 and 208.152.1(6), (12) as to which authorized providers are eligible to receive MO HealthNet payments and which are not, there is no basis for treating section 11.800 in the FY2019 appropriation bill HB2011 as a mere interpretive aid to resolve an ambiguity. Instead, these statutes plainly and unambiguously provide that MO HealthNet "shall" use appropriated funds to pay any authorized provider that renders covered services to Medicaid-eligible individuals. When the meaning of the general law is clear, there is no need for "guidance" in an appropriation bill. As a result, the language in section 11.800 seeking to disqualify certain authorized providers based on services they provide separately and apart from the MO HealthNet program – and for which no MO HealthNet payments can be made – is a naked attempt to use HB2011 both to appropriate funds for various purposes and to amend sections 208.153.1 and 208.152.1(6), (12). This is a clear and unmistakable violation of the proscription in article III, section 23 of the Missouri Constitution against bills with multiple subjects.

11

MO HealthNet argues section 11.800 of HB2011 does not amend sections 208.153.1 and 208.152.1(6), (12) because both can be complied with, i.e., all Medicaid-eligible individuals can receive all covered services from authorized providers and MO HealthNet will pay those authorized providers for those services. This is true, however, only if every single Medicaid-eligible individual in FY2019 happens to choose an authorized provider that is not excluded by the prohibition against payment in section 11.800. In other words, section 11.800 purports to add a limitation on which health care providers MO HealthNet can authorize to provide covered services to Medicaid-eligible individuals. But section 208.153 unambiguously provides that the only limitation is that the health care provider be authorized by an agreement with the MO HealthNet Division to do so. *See* § 208.153.1 ("Any person entitled to MO HealthNet benefits may obtain it from ***any provider*** of services with which an agreement is in effect under this section and which undertakes to provide the services, as authorized by the MO HealthNet division.") (emphasis added).

MO HealthNet also argues that nothing in section 208.152.1(6), (12) guarantees that every health care provider in the state can provide covered services and be entitled to payment from MO HealthNet for them. This, too, is incorrect. Sections 208.153.1 and 208.152.1(6), (12) provide two – and only two – conditions to payment: (1) that the provider be authorized by an agreement with the MO HealthNet Division to provide covered services; and (2) that the provider be chosen by the Medicaid-eligible individual to provide a covered service. Section 11.800 of HB2011 purports to add a third condition. Accordingly, Mo HealthNet's efforts to reconcile section 11.800 with the

12

general law provisions in sections 208.153.1 and 208.152.1(6), (12) fail.[8] If the General Assembly wants to change the conditions that must be met to be an authorized provider of MO HealthNet services, it must do so by amending the statutes in which those conditions are found – and article III, section 23 prohibits a bill whose subject is appropriations from also being used for that purpose. Until a proper amendment is enacted, an appropriation bill can say how much money can be used and for what purpose, but sections 208.153.1 and 208.152.1(6), (12) control who is eligible to receive those funds.[9]

---

[8] The direct and unavoidable conflict between section 11.800 of HB2011 on the one hand and sections 208.153.1 and 208.152.1(6), (12) on the other distinguishes this case from *Rolla 31 School District* and *Opponents of Prison Site, Inc. v. Carnahan*, 994 S.W.2d 573 (Mo. App. 1999). In those cases, the general law was ambiguous in its requirements or the appropriation was consistent with the requirements laid down by the general law. *See Rolla 31 Sch. Dist.*, 837 S.W.2d at 5 (finding no direct conflict created by the appropriation because "there is an inherent ambiguity in section 162.700.5 when it purports to prohibit funding the preschool special education program by a '*reallocation* of money appropriated for the public school foundation program,' because monies from the School Foundation Program had been used to fund a similar voluntary program in prior years"); *Opponents of Prison Site*, 994 S.W.2d at 579 ("giving the words used their plain meaning, we find that the legislative intent, with respect to decisions concerning the construction of prisons, including those involving site selection, was for the JCC to make recommendations to the General Assembly and for it, after due consideration, to decide what course to take, if any, through legislative action" and holding an appropriation was such a "legislative action" within the meaning of the general law). Here, neither is true. Moreover, in *State ex rel. Tolerton v. Gordon*, 139 S.W. 403 (Mo. banc 1911), on which the dissenting opinion relies so heavily, no one even argued the "proviso" at issue in that case was an attempt to amend general or substantive law. Instead, this Court held that the General Assembly's attempt to use this "proviso" to control who could hold the office of State Game and Fish Commissioner violated the separation of powers provision and the constitutional prohibition against special laws. *Id*. at 407-10.

[9] In *Rebman v. Parson*, 576 S.W.3d 605, 610 (Mo. banc 2019), this Court held "the general assembly may control **how many** [administrative law judges] the department [of labor and industrial relations] can appoint, but it may not [use an appropriation bill to] dictate **who** will fill those positions." [Emphasis added.] Though the constraining law in *Rebman* was the Missouri Constitution and the separation of powers doctrine, it sheds meaningful light here. Until amended, sections 208.153.1 and 208.152.1(6), (12) control which providers are eligible to receive whatever funds are appropriated to provide covered services to Medicaid-eligible

13

Finally, MO HealthNet argues sections 208.153.1 and 208.152.1(6), (12) do not purport to fund Planned Parenthood's – or any other authorized provider's – participation in the delivery of MO HealthNet services, nor do these statutes obligate the General Assembly to provide such funding in any given year. These assertions are far from the point. Plainly, nothing in sections 208.153.1 and 208.152.1(6), (12) purports to appropriate money or to require an appropriation of any amount in any year and, unless funds stand appropriated by the constitution or the constitution mandates an appropriation be made, it is beyond question that the General Assembly has discretion to decide appropriations on an annual or biannual basis. But these bedrock legal principles do not resolve the present case. Here, the General Assembly chose to appropriate nearly $400 million for, among other things, providing physicians' services and family planning to Medicaid-eligible individuals in section 11.455 of HB2011. This was one of presumably thousands of difficult decisions made each year during the appropriations process. But, having made this decision, MO HealthNet is bound by general law – e.g., sections 208.153.1 and 208.152.1(6), (12) – defining what those services are and which providers are entitled to payment for delivering them. Any attempt to use an appropriation bill to amend such general laws necessarily runs afoul of the multiple subject prohibition in article III, section 23 of the Missouri Constitution.

---

individuals, and the General Assembly cannot circumvent those statutes by inserting new limitations in an appropriation bill.

## II. Section 11.800 Is Properly Severed from HB2011

It is imprecise to say this or that section or phrase in a bill violates the single subject requirement in article III, section 23 of the Missouri Constitution. This requirement applies to entire bills, and a bill either complies or it does not. Nevertheless, this Court routinely engages in a severance analysis to determine whether it is proper to strike only the provisions that caused the single subject violation and leave the remainder of the bill in effect. *See, e.g., Hueller*, 289 S.W. at 341 (declaring only the offending portion of the appropriation bill "unconstitutional ***and void***") (emphasis added). Here, the circuit court determined severance was appropriate but relied upon section 1.140 to do so. The reliance on this statute was incorrect, as this Court has explained in the past:

> It is important to note that this Court applies a different severance analysis for procedurally unconstitutional statutes than it does for substantively unconstitutional statutes. The statutory severability provision, section 1.140, RSMo Supp. 2011, applies when a provision is unconstitutional in substance. While section 1.140 delineates when severance of *substantively* unconstitutional provisions is appropriate, it does not support the doctrine of severability of bills enacted in violation of the *procedural* mandates of the constitution.…

> As *Hammerschmidt* indicates, when "the procedure by which the legislature enacted a bill violates the Constitution, severance is a more difficult issue." 877 S.W.2d at 103. In fact, the severance analysis is different. That is because the General Assembly's constitutional violation raises the following question: If all provisions of the bill were passed through an unconstitutional procedure, should any of the provisions be considered valid? Despite this concern, and in due deference to our co-sovereign branch of government—which also takes an oath to support the Missouri Constitution—this Court has severed bills presenting procedural violations in the past. *See St. Louis Cnty. v. Prestige Travel, Inc.,* 344 S.W.3d 708 (Mo. banc 2011); *cf. Hammerschmidt,* 877 S.W.2d 98.

> Because of the difference between *substantive* constitutional violations and *procedural* constitutional violations, this Court uses different standards

when evaluating whether invalid provisions may be severed. For *substantive* violations, this Court applies section 1.140 to analyze whether severance is appropriate. On the other hand, when evaluating a *procedural* constitutional violation, the doctrine of judicial severance is applied and severance is only appropriate when this Court is "convinced beyond a reasonable doubt" that the legislature would have passed the bill without the additional provisions and that the provisions in question are not essential to the efficacy of the bill. *Hammerschmidt,* at 103–104. Both of these inquiries seek to assure the Court that, beyond a reasonable doubt, the bill would have become law—and would remain law—even absent the procedural violation. If the Court is not convinced beyond a reasonable doubt, then the bill as a whole was passed in violation of the constitution and the challenged provisions cannot be severed.

*Mo. Roundtable for Life, Inc. v. State*, 396 S.W.3d 348, 353-54 (Mo. banc 2013) (footnotes omitted).

Although the circuit court's reference to section 1.140 was inappropriate, its conclusion that 11.800 is severable was correct. The General Assembly intentionally segregated section 11.800 from the appropriations in the remainder of the bill. In fact, section 11.800 is the only section included in Part 3 of HB2011, and the General Assembly refers to Part 3 elsewhere in HB2011 as "guidance to the Department of Social Services in implementing the appropriations found in Part 1 and Part 2." The General Assembly expressly noted that the provisions of Part 2 "shall not be severed" from Part 1 but provided no similar prohibition against severing section 11.800 in Part 3. Accordingly, this Court is convinced beyond a reasonable doubt that HB2011 would have passed without section 11.800 and that nothing in 11.800 is essential to the efficacy of the appropriations made elsewhere in HB2011. The judgment of the circuit court is affirmed in this respect.

16

### III. Costs Were Improperly Taxed to MO HealthNet

The very last sentence in the circuit court's judgment states: "Costs are taxed against [MO healthNet]." This subject is not mentioned anywhere else in the judgment. MO HealthNet claims this was error because costs cannot be taxed against the state (or its departments, divisions, agencies, or officers in their official capacities) without a specific statute authorizing the court to do so. MO HealthNet is correct. *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 882 (Mo. banc 1993) ("Absent statutory authority, costs cannot be recovered in state courts from the state of Missouri or its agencies or officials."). No statute authorizes the circuit court to tax costs against the state in this action, and the judgment is vacated with respect to this issue.

Planned Parenthood argues the circuit court acted properly under section 536.087.1, which provides:

> A party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the state, shall be awarded those reasonable fees and expenses incurred by that party in the civil action or agency proceeding, unless the court or agency finds that the position of the state was substantially justified or that special circumstances make an award unjust.

*See also Garland v. Ruhl*, 455 S.W.3d 442, 446 (Mo. banc 2015) ("Section 536.087 waives sovereign immunity only for unjustified positions by state agencies in contested administrative cases.") (quotation marks and emphasis omitted).

To be sure, Planned Parenthood sought an award of attorney fees and expenses under section 536.087 in its petition for judicial review. And assuming, without deciding, that this action arose from an "agency proceeding" as defined in section

536.085(1), Planned Parenthood may be entitled to such an award if the legal positions taken by MO HealthNet were not substantially justified as required by section 536.087.1. But nothing indicates this is what the circuit court intended to do, and much suggests it was not. To "tax costs" to a non-prevailing party is not the same as to "award" fees and expenses to a party who prevails against the state in an administrative proceeding. The former is automatic and largely ministerial. *See* §§ 514.060 ("In all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law."); 514.260 ("The clerk shall tax and subscribe all bills of costs arising in any cause or proceedings instituted or adjudged in the court …"). An award of attorney fees and expenses under section 536.087, on the other hand, requires evidence and a more nuanced evaluation of the state's positions.

With no indication that the circuit court was acting under section 536.087.1 with respect to the challenged portion of the judgment taxing costs to MO HealthNet, the use of the verb "taxed" rather than "awarded" leads this Court to assume the circuit court was acting under section 514.060. That statute is not sufficient to authorize the circuit court to tax costs to the state actors in this action, however, and the portion of the judgment doing so is reversed.

**Conclusion**

For the reasons set forth above, the portion of the circuit court's judgment declaring section 11.800 of HB2011 to be unconstitutional under the single subject requirement in article III, section 23 of the Missouri Constitution and severing that

18

provision from the remainder of HB2011 is affirmed. The portion of the circuit court's judgment declaring the cross-reference to section 188.015 in section 11.800 of HB2011 to be unconstitutional under article IV, section 23 of the Missouri Constitution is vacated as unnecessary. The portion of the judgment taxing costs to MO HealthNet is reversed.

_____
Paul C. Wilson, Judge

Draper, C.J., Russell, Powell, Breckenridge and Stith, JJ., concur;
Fischer, J., dissents in separate opinion filed.

19



# SUPREME COURT OF MISSOURI
## en banc

PLANNED PARENTHOOD OF )
ST. LOUIS REGION, ET AL., )
                   )
             Respondents, )
                   )
v.                    )    No. SC98020
                   )
DEPARTMENT OF SOCIAL SERVICES, )
DIVISION OF MEDICAL SERVICES, )
ET AL.,               )
                   )
              Appellants. )

### DISSENTING OPINION

I respectfully dissent. In concluding § 11.800 of HB2011 violates article III, § 23 of the Missouri Constitution, the principal opinion fails to persuade me that the plain and unambiguous language of § 23—which exempts appropriation bills from its purview—does not control the resolution of this case. I also dissent because, even if § 23 does apply to appropriation bills, the challenged language in HB2011 is constitutional because it embraces one of the various subjects for which money is appropriated.

Section 23 provides, "No bill shall contain more than one subject which shall be clearly expressed in its title, ***except . . . general appropriation bills, which may embrace the various subjects and accounts for which moneys are appropriated.***" (Emphasis added). This Court has repeatedly held, when the language of a constitutional provision is

clear and unambiguous, this Court has no other duty than to apply the language of the provision as written. *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 605 (Mo. banc 2019) ("If the language of a statute[1] is plain and unambiguous, this Court is bound to apply that language as written and may not resort to canons of construction to arrive at a different result."); *Saint Louis Univ. v. Masonic Temple Ass'n of St. Louis*, 220 S.W.3d 721, 726 (Mo. banc 2007) ("Constitutional construction is not required if the words at issue are plain and unambiguous."); *Concerned Parents v. Caruthersville Sch. Dist. 18*, 548 S.W.2d 554, 559 (Mo. banc 1977) (same).

The principal opinion starts its analysis with the plain language of § 23 and acknowledging § 23 "prohibits bills with more than one subject ***but allows a narrow exception to that prohibition for appropriation bills because such bills necessarily include multiple subjects, i.e., appropriations of differing amounts from differing accounts for differing subjects.***" *Slip op.* at 7 (emphasis added).[2] Instead of following the clear and unambiguous language of § 23, the principal opinion cites to *Rolla 31 School District v. State*, 837 S.W.2d 1 (Mo. banc 1992), *State ex rel. Davis v. Smith*, 75 S.W.2d 828 (Mo. banc 1934), and *State ex rel. Hueller v. Thompson*, 289 S.W. 338 (Mo. banc 1926), for the proposition that an appropriation bill that amends a general law necessarily contains multiple subjects in violation of § 23. *Slip op.* at 7-9. By using *Rolla 31*, *Davis*,

---

[1] "The rules applicable to construction of statutes are applicable to the construction of constitutional provisions; the latter are given broader construction due to their more permanent character." *Buechner v. Bond*, 650 S.W.2d 611, 612 (Mo. banc 1983).

[2] At no point does the principal opinion suggest, let alone conclude, § 23's language is unclear or ambiguous.

2

and *Hueller* to justify the application of § 23 to HB2011, instead of the plain language of the constitution, the principal opinion puts the cart well before the horse.

While *Rolla 31*, *Davis*, and *Hueller* generally hold the legislature may not amend general laws through appropriation bills, they fail to engage in any meaningful analysis tethering that policy proposition to the plain text of § 23. Instead, those cases merely contain blanket assertions and citations to past cases that explain the perceived good policy behind the proposition. *See Rolla 31*, 837 S.W.2d at 4 ("[Section 23], which provides that no bill shall contain more than one subject and limits appropriation bills to appropriations only, is still good law."); *Davis*, 75 S.W.2d at 830 (citing *Hueller* and stating, "[L]egislation of a general character cannot be included in an appropriation bill. If an appropriation bill had attempted to amend section 13525, it would have been void in that it would have violated [§ 23][.]").[3]

---

[3] *Hueller* provides:

> As has been observed in well-reasoned cases, if the practice of incorporating legislation of general character in an appropriation bill should be allowed, then all sorts of ill conceived, questionable, if not vicious, legislation could be proposed with the threat, too, that, if not assented to and passed, the appropriations would be defeated. The possibilities of such legislation and this court's condemnation thereof are well illustrated in the case of *State ex rel. Tolerton v. Gordon*, 236 Mo. 142, 139 S. W. 403 as well as the following cases from other states: *State ex rel. v. Carr*, 129 Ind. 44, 28 N. E. 88, 13 L. R. A. 177, 28 Am. St. Rep. 163; *Com. v. Gregg*, 161 Pa. 582, 29 A. 297.
>
> Our Constitution [§ 23], is the one certain safeguard against such distracting possibilities and should be strictly followed.

289 S.W. at 341. Once again, no analysis is undertaken showing how this proposition stems from the plain text of the Missouri Constitution. Of the cases cited by *Hueller*, only *Gregg* adequately delves into a constitutional analysis; however, that case is legally distinguishable from the present one. In *Gregg*, the Supreme Court of Pennsylvania noted its constitutional equivalent to § 23, article III, section 2, which read, "that no bill, except general appropriation bills, shall be passed, containing more than one subject." 29 A. at 298 (internal quotations omitted). That court went on to address the issue of the legislature inserting general legislation into appropriation bills but noted "[g]eneral appropriation bills, from their nature, usually cover a number of items, not all relating

3

Without any textual foundation in the constitution, this Court cannot rely on perceived good policy to add words to the clear and unambiguous language of § 23. *See Indep.-Nat'l Educ. Ass'n v. Indep. Sch. District*, 223 S.W.3d 131, 137 (Mo. banc 2007) (holding this Court has no authority to add language to constitutional provisions when the language written is clear and unambiguous). Even if one accepts the principal opinion's assertion that an appropriation bill that amends a general law contains multiple subjects, I still do not agree that § 23 is violated because § 23 expressly allows appropriation bills to embrace an unlimited amount of subjects, so long as they relate to the appropriation of money. By disregarding the constitution's plain language in favor of policy considerations, the principal opinion sets a dangerous precedent in which I cannot acquiesce.

Even if § 23 applied to appropriation bills, and it does not, the challenged language in HB2011 remains constitutionally sound because it "embrace[s] the various subjects and accounts for which moneys are appropriated." Within the provisions of HB2011, the General Assembly appropriated funds "[f]or the purpose of funding physician services and related services including, [. . .] family planning services under the MO HealthNet fee-for-service program." HB2011, § 11.455 (2018). In limiting this appropriation, the General Assembly included the language at issue here, which provides, "In reference to all sections

---

strictly to one subject. ***They were therefore excepted from the requirement of section 2, and this exception necessitated the special section 15 relating to them.***" *Id.* at 297-98 (emphasis added). Article III, section 15 provided, "The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the commonwealth." *Id.* at 297. A close reading of *Gregg* shows it stands for the proposition that appropriation bills are exempt from any single-subject constitutional provision, so much so that Pennsylvania had to adopt a second constitutional provision to limit the scope of such bills. Because Missouri's Constitution does not have a provision mirroring Pennsylvania's Article III, section 15, *Gregg's* reasoning cannot be imported to *Rolla 31*, *Davis*, and *Hueller*.

4

in Part 1 [which includes § 11.455] and Part 2 of this act: No funds shall be expended to any abortion facility as defined in Section 188.015, RSMo, or any affiliate or associate thereof." HB2011, § 11.800(2018). Section 23 is not ambiguous; therefore, this Court must apply its plain language to determine if § 11.800 violates our constitution. *See Hillman*, 566 S.W.3d at 605.

The relevant question becomes whether § 11.800 "embrace[s] the various subjects and accounts for which moneys are appropriated." The General Assembly expressly appropriated funds for family planning in § 11.455 and included § 11.800 as a limit on where those appropriated funds could be distributed. The inclusion of § 11.800 undeniably embraces a subject—the expenditure of funds appropriated for family planning—for which the General Assembly appropriated funds. As such, § 11.800 does not violate § 23.

This analysis and conclusion is supported by *State ex rel. Tolerton v. Gordon*, 139 S.W. 403 (Mo. banc 1911). In *Tolerton*, the General Assembly passed the general appropriation bill for 1911 and 1912, which included a section appropriating money for various expenses relating to the operations of the State Fish and Game Department ("§ 62"). *Id.* at 405. At the end of § 62, the General Assembly included the following language ("the proviso"):

> Provided, that none of the money herein appropriated in this section shall be available or paid so long as the present State Game and Fish Commissioner remains in this office or is in any wise connected with the office of State Game and Fish Commissioner, except the salaries and accounts due at the time of the approval of this act.

*Id.* (internal quotation omitted).

5

Tolerton, the acting State Fish and Game Commissioner, argued the proviso violated the constitutional precursor to § 23. *Id.* at 406. Although this Court recognized "the main purpose of the proviso is the removal of [Tolerton] from the office of game and fish commissioner" it ultimately held:

> While the proviso may have had and doubtless did have an object ulterior to the subject of the appropriation of money, it is clearly related to that subject, and has a sufficiently natural connection therewith as not to be misleading and as not to conflict with the section of the Constitution concerning the title of a legislative bill.

*Id.*

*Tolerton*'s reasoning applies with equal force here. Regardless of the General Assembly's ulterior motives in including § 11.800 in HB2011, it is evident § 11.800 has a natural connection to the General Assembly's appropriation of money for family planning and is, therefore, constitutional.[4]

———————————————
Zel M. Fischer, Judge

———

[4] This Court has used different phrases to describe the test that determines whether a bill violates § 23. *See Calzone v. Interim Comm'r of Dep't of Elementary & Secondary Educ.*, 584 S.W.3d 310, 321 (Mo. banc 2019) ("A bill does not violate the single subject requirement so long as the matter is germane, connected, and congruous.") (internal quotations and alterations omitted); *see also Mo. Roundtable for Life, Inc. v. State*, 396 S.W.3d 348, 351 (Mo. banc 2013) ("The test for whether a bill violates the single subject rule is whether the bill's provisions fairly relate to, have a natural connection with, or are a means to accomplish the subject of the bill as expressed in the title.") (internal quotations omitted); *see also Hammerschmidt v. Boone Cnty.*, 877 S.W.2d 98, 102 (Mo. banc 1994) ("[A] 'subject' within the meaning of article III, section 23, includes all matters that fall within or reasonably relate to the general core purpose of the proposed legislation.") Regardless of what test is used, it is clear that § 11.800 is related to the general purpose of the bill, which is the appropriation of money for, among other things, family planning.

6